[Civil Nos. 3803, 3804, 3805.   Filed June 14, 1937.]

[69 Pac. (2d) 573.]

WILL McCLURE, Administrator of the Estate of RALPH GILLILAND, Deceased, Appellant, v. ZELLA V. JOHNSON, by P. J. WHITE, Her Guardian Ad Litem, Appellee (3803); WILL McCLURE, Administrator of the Estate of RALPH GILLILAND, Deceased, Appellant, v. ALICE LEE JOHNSON, by P. J. WHITE, Her Guardian Ad Litem, Appellee (3804); WILL McCLURE, Administrator of the Estate of RALPH GILLILAND, Deceased, Appellant, v. ORVILLE JOHNSON and MARGUERITE JOHNSON, Husband and Wife, Appellees (3805). (Consolidated.)

Messrs. Sloan, Scott & Green, for Appellant.

Messrs. Cox & Moore, for Appellees.

LOCKWOOD, J.—These cases arose out of an automobile accident which occurred near Phoenix, Arizona, on February 20, 1935. The actions were consolidated and tried to a jury in the superior court, which returned three separate verdicts in favor of the various plaintiffs. Since the facts and the legal issues involved are the same in all of the cases, except as to the damages allowed for the injuries to the respective plaintiffs, we shall discuss the three cases as though they were one.

The facts of the case, taken as strongly in support of the verdict as the evidence reasonably justifies,

may be stated as follows: Prior to February 16, 1935, Ralph Gilliland, hereinafter called decedent, who was then a resident of southwestern Missouri, decided to remove with his family to California. Orville Johnson, one of the plaintiffs herein and a friend of decedent of several years standing, learned of this fact and entered into an agreement with decedent whereby he, in consideration of $20 to be paid by Johnson, agreed to transport the latter and his family from Missouri to California in decedent's automobile. The two families left Missouri on February 16th in decedent's car. Those constituting the party were decedent, his wife, and three minor children, and Johnson, his wife, and their two minor children. The party arrived in Phoenix the night of February 19th, and remaining there overnight, arose early in the morning of the 20th and resumed their journey to California, via the Wickenburg highway. Decedent and Johnson had alternated in driving the car during the trip, but from Phoenix up to the time of the accident it was driven by decedent. Somewhere between Marinette and Mountain View Service Station, a short distance south of Wickenburg, the car driven by decedent came into a collision with a truck, as a result of which decedent was so seriously injured that he died a few minutes after the wreck, while all of the other passengers received more or less serious injury. These suits were filed on September 27, 1935. The material allegations of the complaint in case No. 42413, which is substantially similar to the complaints in the other cases except so far as the extent of the injury complained of is concerned, read as follows:

"II    That heretofore, to-wit, On or about the 15th day of February, 1935, defendant's decedent Ralph Gilliland was the owner of a certain Chrysler sedan automobile motor #R–258195, and on or about said February 15, 1935, in the City of Republic, in Green

County, Missouri, the defendant's decedent Ralph Gilliland entered into an oral agreement with the plaintiff herein through her father and mother, wherein and whereby for a valuable consideration the defendant's decedent Ralph Gilliland agreed to safely transport and carry the plaintiff from the said town of Republic, Green County, Missouri, to the town of Anaheim, in the State of California.

"III That on or about said date, to-wit: February 15, 1935, pursuant to the said agreement, defendant's deceased Ralph Gilliland received the above named plaintiff in his said Chrysler sedan automobile for the purpose of safely conveying and transporting her therein from Republic in Green County, Missouri, to the town of Anaheim, in the State of California.

"IV That defendant's decedent did not fulfill his agreement to safely and carefully transport plaintiff and deliver her in said town of Anaheim, California, but on the contrary while en route from Republic, Green County, Missouri, to Anaheim, California, on the 20th day of February, 1935, at a point approximately twenty (20) miles northwest of Phoenix, Maricopa County, Arizona, which said point is in Maricopa County, Arizona, defendant's decedent Ralph Gilliland operated his said automobile in which plaintiff was being transported and conveyed as hereinbefore set forth in such a manner and at such a high rate of speed that it collided with a truck being driven on said highway at said point and defendant's decedent's said car overturned and threw plaintiff from said car and seriously and permanently injured the plaintiff. That said accident, collision and injuries to the plaintiff Zella V. Johnson were caused by the negligence of defendant's decedent Ralph Gilliland in that the said decedent while travelling on said highway and driving his automobile at said time and place negligently and carelessly permitted the left wheels of his automobile to travel approximately in the center of said highway when there was approaching him from the opposite direction a large truck which was also travelling with its left wheels in the center of said highway, and at said time and place on said highway there was sufficient room for said decedent to have

turned his automobile to the right and miss said large truck, but said decedent negligently and carelessly failed to turn his automobile to the right so as to miss said truck and by reason of such negligence and carelessness decedent's said automobile collided with said truck as above set out. . . . ''

There are some ten assignments of error which we will consider in accordance with the legal propositions raised thereby. The first question is whether the cause of action declared on survived the death of Ralph Gilliland, which, as we have said, occurred a very few moments after the accident. It is contended on behalf of defendant that this is a tort action and, under the law of Arizona, unless the action is brought before the death of the alleged tort-feasor, the right of action fails. The precise question has never been specifically determined in this state.

■■ We have held in many cases that the common law, except as modified by statute or unsuited to our local system or condition, is still in force in Arizona. *Masury & Son* v. *Bisbee Lumber Co.*, 49 Ariz. 443, 68 Pac. (2d) 679. It is admitted that under that law a cause of action for personal injuries or death based upon a tort did not survive the death of either the wrongdoer or that of the person killed or injured. 1 C. J. 184. So far as the death of the injured party is concerned, the rule was modified by Lord Campbell's Act in England, and most of the states of this country, including Arizona, have adopted the same modification. Sections 3772 and 3774, Rev. Code 1928. But even in such cases the modification has not usually been extended to permit the bringing of an action after the death of the alleged tort-feasor. It is true that section 3772, *supra,* provides for the continuance of a *pending action* after the death of either party, but it is urged that this section only applies to cases where an action has been brought before the death of the

party. The Circuit Court of Appeals of the Ninth Circuit, in the very recent case of *McLellan* v. *Automobile Ins. Co. of Hartford, Conn., et al.,* 80 Fed. (2d) 344, had occasion to pass upon this question in a case which originated in Arizona, and the court, after a review of our statutes, held that if it appeared in the record that the tort-feasor had died before the action was commenced, the action failed. It is true in that case that there were three separate opinions, but on this particular phase of the case all of the judges agreed. We are of the opinion that the decision of that court was correct on the point referred to, and that under the law of Arizona when a tort-feasor dies before the commencement of an action, the cause of action does not survive his death, and a plea in abatement should be sustained if the fact appears on the face of the complaint, or a verdict should be directed in favor of defendant if it is first shown by the evidence. The rule seems a harsh one, for we cannot see why, as a matter of justice, the common-law disability should be removed if the action is filed before the tort-feasor dies, but remains if the death occurs too quickly for the injured party to commence the action. The remedy, however, is with the legislature and not with the courts.

This rule, however, applies only when the gravamen of the action is the tort, and does not cover those cases in which it is a breach of a contract. It is apparent from the language of the complaint in this case that the pleader knew and realized the effect of the rule, and presumably for that reason placed in his complaint those allegations of a contract of carriage for hire, unnecessary if the action was based on the tort, but which would be required to state a cause of action on contract. Defendant, however, contends, notwithstanding these allegations of the complaint, the gravamen of the action is nevertheless in tort, and that the

rule above set forth applies thereto. We have had before us in the case of *Southern Pacific R. Co. of Mexico et al. v. Gonzalez,* 48 Ariz. 260, 61 Pac. (2d) 377, 386, 106 A. L. R. 1012, a somewhat similar question. In that case defendant pleaded the statute of limitations. If the action was *ex delicto,* it was barred by the statute, but if it was *ex contractu,* it was not. That case involved the rights and duties of a common carrier of freight, while the one at bar sets up that decedent was a private carrier of passengers for hire. The practical difference, so far as the present situation is concerned, is that while a common carrier of goods, in the absence of specific provisions of a contract legally limiting such liability, is, in effect, an insurer of the goods transported except as to acts of God or the public enemy, the duty of a private carrier of passengers for hire is limited to reasonable and ordinary care only except as specially provided by the contract. *Indianapolis Traction & T. Co. v. Lawson,* (C. C. A.) 143 Fed. 834, 5 L. R. A. (N. S.) 721, 6 Ann. Cas. 666. In the Gonzalez case, *supra,* we said:

"The determination of the nature of the action involves a brief review of the law respecting the responsibility of carriers and the actions which may be brought to recover on such responsibility. Under the common law, the obligation of a common carrier was long supposed to rest entirely upon a public duty imposed by the law as a matter of public policy, which was an obligation to carry safely without excuse or exception, save for such losses as might be occasioned by the act of God or the public enemy. The idea of contract or the obligations resulting from it were never associated with the question of a carrier's responsibility. Actions for a violation of this obligation were therefore necessarily *ex delicto* and not *ex contractu.* About 1750, however, in the case of *Dale v. Hall,* 1 Wils. 281, there was an innovation upon this doctrine, the court holding, in substance, that there was a contract, express or implied, which created the relation of

shipper and carrier, and that a shipper could sue either upon his contract in *assumpsit* or on the case for the breach of a public duty. [Citing cases.] From that time on, actions were based sometimes on one and sometimes on the other theory. There are still however, well-recognized differences existing between an action *ex contractu* and that *ex delicto,* which are important in determining whether the one or the other should be brought. For example, if there is any doubt as to who should be made defendants, the action on the case is preferable because such an action is several and not joint. Further, it is not necessary to state the circumstances with as much certainty as in an action in *assumpsit.* On the other hand, since the action *ex contractu* generally carries with it a longer period of limitations than does that *ex delicto,* it may be, as in the present case, of great importance that it be based on contract. It is frequently, however, very difficult to determine to which class a complaint belongs. In such cases of doubt the general rule for this, as well as other actions where the question becomes important, is set forth by us in *Andersen* v. *Thude,* 42 Ariz. 271, 25 Pac. (2d) 272, 273, as follows: 'It is the rule that if the complaint may be construed either as one in tort or one on contract, that it will be presumed to be the latter. [Citing cases.] And while a defense raising the statute of limitation is recognized, it is never favored by the courts, and if there is doubt as to which of two statutes applies, the longest period is generally used. [Citing cases.]' . . .

"We have been unable to find any cases precisely in point or that even approach reasonably to the situation involved in the present action, and we feel that the question is one of considerable doubt. It does appear, however, from a number of adjudicated cases, that if the action is, as a matter of fact, on contract, the mere fact that the contract was breached through the negligence of the defendants does not in and of itself change the action into one in tort."

In the case of *Central Arizona L. & P. Co.* v. *Bell,* 49 Ariz. 99, 64 Pac. (2d) 1249, 1251, we quote approvingly from 1 C. J. 1017, § 139, as follows:

" 'There are also certain classes of contracts which create a relation out of which certain duties arise as implied by law independently of the express terms of the contract, a breach of which will constitute a tort, and in such cases an injured party may sue either for breach of the contract or in tort for breach of the duty imposed by law, the rule being that, where there is a breach of duty imposed by law, an action in tort is not precluded because such duty arises out of a contract relation. This rule applies in the case of the contractual relation between . . . carrier and passenger or shipper, and between other public service corporations, or persons exercising such franchises, and their patrons, such as gas or water companies, or telegraph companies.' "

It appears, therefore, that in cases where an action is brought against a carrier for hire based on a breach of a contract for carriage resulting from the negligence of the carrier, the plaintiff may sue either in *assumpsit* or case, and in this jurisdiction, if there is a reasonable doubt as to which the action is based upon, the court should presume that the pleader has chosen the action which is not barred rather than the one which cannot be successfully maintained. It is very evident that the pleader herein has attempted to make a breach of contract the gravamen of the action. The question is, Has he successfully done so?

We have been cited by defendant to a number of cases which he contends sustains his theory that the complaint herein must be construed as founded on the tort. Many of these cases are not applicable, for the reason that there is some statute in the state from which the case comes expressly providing that *any* cause of action arising out of injury to the person dies with the death of the party causing the injury. Such are the cases of *Webber* v. *St. Paul City R. R. Co.,* (C. C. A.) 97 Fed. 140; *Bernstein* v. *Queens County Jockey Club,* 222 App. Div. 191, 225 N. Y. Supp. 449;

*Harkins* v. *Provenzo,* 116 Misc. 61, 189 N. Y. Supp. 258. On the other hand, a number of the cases so cited are based upon statutes substantially like ours, and hold that a complaint of the nature of that in the present case is based upon tort, and that the allegations in regard to the contract are merely an inducement showing the relationship between the parties and the existence and the nature of the duty out of which the liability imposed by the law arose. *Herron* v. *Miller,* 96 Okl. 59, 220 Pac. 36; *Canaday* v. *United Rys. Co.,* 134 Mo. App. 282, 114 S. W. 88; *Pittsburgh, C., C. & St. L. R. Co.* v. *Higgs,* 165 Ind. 694, 76 N. E. 299, 4 L. R. A. ( N. S.) 1081; *Basler* v. *Sacramento Elec. etc. Co.,* 166 Cal. 33, 134 Pac. 993.

Whether an action is in contract or in tort should be determined in the first place from the pleadings, and by an examination and consideration of the essential allegations of the complaint rather than the form adopted by the pleader, what the pleader calls it, the understanding of counsel or of the trial court, and the question must be determined by reference to the complaint as a whole, and not by particular words or allegations considered apart from the context. 1 C. J. S. 1100, Actions, § 46. We think a good test to be used in determining whether a pleading sets up a case in contract or in tort may be stated as follows. When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty *imposed by law as a result of the contractual relationship between the parties* is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the

contract itself, and in such case allegations of the latter are considered mere inducement, showing the relationship which furnishes the right of action for the tort, but not the basis of recovery for it, and in such cases the remedy is an action *ex delicto*. *Banfield* v. *Addington,* 104 Fla. 661, 140 So. 893, and cases cited therein. As was said in *Pecos & N. T. Ry. Co.* v. *Amarillo St. Ry. Co.,* (Tex. Civ. App.) 171 S. W. 1103, 1105:

"If the transaction had its origin in a contract which places the parties in such relation as that in performing or attempting to perform the service promised the wrong is committed, then the breach of the contract is not the gravamen of the action. There may be no technical breach of the letter of the contract; the contract in such case is a mere inducement and should be so pleaded. It induces, causes, creates the conditions or state of things which furnishes the occasion for the wrong. *It is the wrong outside the letter of the contract which is there the gravamen of the suit.*" (Italics ours.)

In the case at bar the alleged contract was that the defendant would "safely transport and carry the plaintiff . . . to the town of Anaheim, in the State of California." While the duty imposed by law on a private carrier as a result of his contract of carriage is only that he will exercise ordinary care in carrying out the contract, there is no rule preventing his undertaking to insure the safe delivery of his passengers, and, if he does so undertake, he will be liable accordingly. But such an extended liability is not to be readily presumed, and a mere undertaking to carry safely imposes no higher duty than is already imposed as a matter of law on the carrier. *Robinson* v. *Dunmore,* 2 B. & P. 416, 126 Reprint, 1359; *Scaife* v. *Farrant,* L. R. 10 Exch. 358; *Ames* v. *Belden,* 17 Barb. (N. Y.) 513.

Tested by the foregoing rules, it is very doubtful whether even a specific agreement to "safely transport and deliver" is a specific insurance of the safe delivery of the passenger. If it is not, but, as has been stated above, creates no additional contractual liability over that already imposed by law on a private carrier for hire, then, taking the pleading as a whole, it would seem that what it sets up, in substance, is a contractual relationship existing between the parties, as a result of which the law imposed a certain legal duty on the decedent, to wit, to carry plaintiffs with reasonable care, and that in an attempt to carry out his contract he committed an act which was a breach, not of the contractual, but of the legal duty, which act resulted in the injuries complained of by the various plaintiffs. This, under the rule stated, fixes the gravamen of the action as the tort.

But assuming, without admitting, that the allegations that decedent agreed to "safely transport and carry" did create him an insurer of safe carriage and delivery, so that an action in contract would lie for the breach of the promise, we think the evidence fails to support the contract pleaded.

The fifth assignment of error is that the court erred in not directing a verdict in favor of defendant, on the ground that there was a variance between the pleading and the proof, in that the proof showed that the cause of action, if any, was in tort. This is, in substance, a claim that the proof did not sustain the allegations of the complaint in regard to the contract. We have examined the reporter's transcript to ascertain just what the contract between the decedent and the Johnsons was. This rests solely on the testimony of Orville Johnson. His only references to the contract of carriage are as follows:

"A. Well, Mr. Gilliland had wrote out here to his uncle and the uncle told him he figured he could get

work if he was out here, and he came down to see me to see if I could come with him, and I told him I didn't see how I could, I didn't have the money, and he said it would not cost me much to come out here, so I told him I didn't think there was any use of me figuring on coming at all, and he wanted me to come, so later then, he came down and he talked me into the notion of coming, about three or four days before we started.

"Q. Was that the day he bought the Chrysler? A. Yes.

"Q. Did he tell you he was going to buy a car? A. He told me he thought he would trade cars.

"Q. You stated that he said it would not cost you much, what was the understanding regarding that, what it was going to cost you? A. He said he would bring us out here for $20.00.

"Q. He said he would bring you out here for $20.00? A. Yes that was the last time. He came down. The first time it was $30.00. . . .

"Q. Well, then, the complaint here, in case No. 42415, you state, among other things, in paragraph 2, that heretofore, to-wit: on or about the 15th day of February, 1935, defendant decedent, Ralph Gilliland, was the owner of a certain Chrysler sedan automobile, Motor No. R-258195, and on or about said February the 15th, 1935, in the City of Republic, in Green County, Missouri, the defendant decedent, Ralph Gilliland, entered into an oral agreement with the plaintiffs herein, wherein and whereby for a valuable consideration, the defendant decedent, Ralph Gilliland, agreed to safely transport and carry the plaintiffs from the said town of Republic, Green County, to the town of Anaheim, in the State of California. You authorized your attorneys to make that allegation, did you? Did you tell them to put that in the complaint? A. I don't remember now. They wrote it and I read it over and I signed it the way they had it, I don't remember whether I just told them to put it in there or not, but it was all right.

"Q. But the oral agreement that I just read to you —spoken of, is that the one that you just told us about, the $20.00 consideration? A. Yes."

We think this is entirely insufficient to transform the ordinary contract of a private carrier for hire into the extraordinary one of an insurer of the safety of his passengers. Such being the case, the evidence does not sustain the allegation that decedent contracted to *safely* transport *and deliver* the plaintiffs in California, but merely that he agreed to transport them. The obligation of reasonable care in such transportation was not imposed by the contract, but by the law as the result of the relationship arising out of the contract, and the remedy for a breach of that obligation was in tort, and not in contract. The trial court should, therefore, have sustained defendant's motion for an instructed verdict on the ground of a variance between the proof and the pleading.

The judgment of the superior court of Maricopa county is reversed in each of the consolidated cases, and they are remanded with instructions to render judgment for the defendant.

McALISTER, C. J., and ROSS, J., concur.