407 P.2d 404

**Russell F. LONG, Appellant,**

**v.**

**Joseph B. MERTZ and Jane Doe Mertz, his wife, Rufus Spoon and Bess M. Spoon, his wife, Julian H. McClure and Jane Doe McClure, his wife, and John Doe I, II, III, IV, V, VI, VII, VIII, IX and X and their wives, Appellees.***

**No. I CA–CIV 45.**

Court of Appeals of Arizona.

Nov. 3, 1965.

Review Denied Dec. 14, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7741. The matter was referred to this Court pursuant to Section 12–120.–23 A.R.S.

Alan Philip Bayham, Phoenix, for appellant.

Dushoff & Sacks, by Jay Dushoff, Phoenix, for appellees Mertz.

Murphy, Posner & Franks, by Jerome L. Froimson, Phoenix, for appellees Spoon.

FRANK X. GORDON, Jr., Judge.

The facts which gave rise to the filing of this action were as follows: Russell F. Long was a contractor with an Arizona contractor's license in General Engineering. From time to time over several years, he

had done work for the Arizona Highway Department.

On March 14, 1958, after a hearing before appellee McClure, the Hearing Officer for the Registrar of Contractors, plaintiff Long's contractor's license was revoked by the Registrar of Contractors, pursuant to A.R.S., Section 32–1154, subsec. 12, for wilful or deliberate failure to pay an equipment rental bill to Western Machinery in the amount of $280.00, which bill plaintiff disputed. ·

The acts complained of in plaintiff's amended complaint all occurred during the pendency of an appeal by plaintiff Long from the Registrar of Contractor's action to the Superior Court in Maricopa County. Ultimately, the action of the Registrar, in revoking plaintiff's license, was set aside and plaintiff's license was reinstated. But it is to be noted that bond on this appeal was not set by the Superior Court until February 19, 1959, and was not filed by plaintiff until some time thereafter.

On December 17, 1958, plaintiff's wife, Reba Long, went to the Arizona Highway Department on plaintiff's behalf and asked appellee Joseph B. Mertz, the engineer in charge of the Contracts and Specifications Division of the Arizona Highway Department, for a bid envelope which contained the plans, specifications and other material necessary to submit a bid on an Arizona Highway Department Federal Aid job involving the construction of a bridge over the Grand Canal on the Black Canyon Highway in the City of Phoenix.

Mr. Mertz refused to give Mrs. Long all of the necessary materials and information after having discussed the matter with appellee Rufus Spoon, the Registrar of Contractors. The reason, according to Long, Mertz gave for refusing was that the Western Machinery bill had to be paid before Long could bid on the job. Mertz contends he stated that Long's license would have to be reinstated before he could bid.

Two days later, on December 19, 1958, Mr. Long, his wife, and three witnesses brought by Long, presented themselves to Mertz in his office. Long then asked Mertz why he had refused the bid envelope to Mrs. Long on December 17, 1958, and allegedly Mertz replied, in the presence of the witnesses, "You are not a qualified contractor."

Plaintiff Long brought suit against Mertz, McClure, and Spoon, and their wives alleging three separate claims for relief. Count I is for damages for libel and slander for having stated Long was not a qualified contractor; Count II for loss of a $4,012.00 profit, due to defendant Mertz's having wrongfully refused to deliver a bid envelope on the job in question; and Count III is for damages for civil extortion.

Count III (civil extortion) was dismissed for failure to state a claim. Summary judgment was granted in favor of defendants on Count I (libel and slander), and during the trial before a jury, a verdict was directed in favor of defendants at the close of the plaintiff's case on Count II (loss of profit), and an involuntary dismissal of the action was ordered by the Judge under Rule 41, subsec. b, Rules of Civil Procedure, 16 A.R.S.

Although all parties discuss the same in their briefs, appellant did not appeal from the order of May 24, 1960, which dismissed Count III (civil extortion) for failure to state a claim, and therefore, this Court shall not consider the assignments of error in connection therewith.

Appellee Rufus Spoon died after all the briefs were filed, and proper motion to dismiss the appeal as to Rufus Spoon and Bess Spoon, his wife, was filed, alleging that the cause of action for libel and slander was extinguished by the death of Mr. Spoon, no allegation having been made that he acted on behalf of the community. No opposition or objection was filed to this motion. We agree with the position of counsel for appellees Spoon, and therefore it is ordered dismissing this appeal with respect to appellee Rufus Spoon and Bess M. Spoon. (See Rule 4, Rules of the Supreme Court, 17 A.R.S., Sec. 14–477, Arizona revised statutes, McLellan v. Automobile Ins. Co., 9 Cir., 80 F.2d 344, and Mc-

Clure v. Johnson, 50 Ariz. 76, 69 P.2d 573, 576.)

The issues then remaining to be determined in this appeal are:

1. Whether defendant Mertz's alleged statement that Long was "not a qualified contractor" was privileged under the circumstances; and

2. Whether the trial court was warranted in directing a verdict in favor of defendants at the close of the plaintiff's case.

The courts, from the days of the common law until the present, have, on the basis of public policy, granted immunity to certain persons from civil liability for having made defamatory statements regarding others. The immunity or privilege is, in some situations, deemed to be absolute; that is, unconditional immunity, even though the statements were made with malice. In others it is deemed to be "qualified" or "conditional", and recovery will be allowed if the court is satisfied that the statements were made maliciously or not in good faith.

> "The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the state, and matters involving military affairs." 33 Am.Jur. Libel and Slander, § 125, p. 123.

This doctrine is generally applied in judicial proceedings subject to the qualification that the statement must be pertinent or relevant to the case. 33 Am.Jur. Libel and Slander, § 143, p. 140.

The qualified or conditional privilege may be invoked by one who, under such circumstances that it becomes right in the interest of society that he should tell third persons certain facts, does so in good faith and without malice. This immunity extends to one whose duty to make the communication is not a legal one, but is only a moral or social duty. 33 Am.Jur. Libel and Slander, § 126, p. 124.

In Arizona, the qualified privilege has been extended to defamatory newspaper publications Phoenix Newspapers, Inc. v. Choisser, 82 Ariz. 271, 312 P.2d 150, Broking v. Phoenix Newspapers, Inc., 76 Ariz. 334, 264 P.2d 413, 39 A.L.R.2d 1382, and to defamatory statements made by a member of the board of trustees of a school district concerning a teacher to other members of the school board at a meeting attended by spectators. Connor v. Timothy, 43 Ariz. 517, 33 P.2d 293.

In Phoenix Newspapers v. Choisser, supra, our Supreme Court said, 82 Ariz. at page 276, 312 P.2d at page 154:

> "It is the *occasion* for the publication rather than the *language* thereof which gives rise to the privilege, and the privilege attaches in spite of the character of the publication itself, and continues until properly rebutted (citing cases)." (Emphasis ours.)

Our Supreme Court has not had occasion to pass upon what type of privilege, if any, attaches to the communications of an appointed official of the Arizona Highway Department of the rank of defendant Mertz.

It is stated in 53 C.J.S. Libel and Slander § 103, p. 166:

> "It has been held that the head of an executive department of government cannot be held liable to a civil suit for damages because of official communications made by him pursuant to a legislative act and with respect to matters within his authority, by reason of any personal motive that might be alleged to have prompted his action. The protection of the rule has been further extended so as to reach and include subordinate government officers when engaged in the discharge of duties imposed on them by law." (Citing cases.)

Supporting this textual statement are several leading cases: Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), Montgomery v. City Of Phila-

delphia, 392 Pa. 178, 140 A.2d 100, and Hardy v. Vial, 48 Cal.2d 577, 311 P.2d 494, 66 A.L.R.2d 739 (Cal.1957).

In Hardy v. Vial, supra, at page 496, the California Supreme Court extended absolute immunity to officials of a state college and the State Department of Public Instruction saying:

> "The rule of absolute immunity, notwithstanding malice or other sinister motive, is not restricted to public officers who institute or take part in criminal actions * * * it has been extended by the federal decisions to all executive public officers when performing within the scope of their power, acts which require the exercise of discretion or judgment."

In extending the principle of absolute immunity from civil suit to a Deputy Commissioner of Public Property and the City Architect of Philadelphia, the Pennsylvania Supreme Court said in the Montgomery case, supra:

> "Absolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business. Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies. * * *
>
> * * * * * *
>
> A refusal to grant the defendants immunity for defamation published in the course of their duties would impair the proper performance of this function."

In support of the extension of absolute privilege to executive officers of lower rank, Schlinkert v. Henderson, 331 Mich. 284, 49 N.W.2d 180—member of State Liquor Control Commission, McAlister & Co. v.

Jenkins, 214 Ky. 802, 284 S.W. 88—member of State Real Estate Commission, and Bigelow v. Brumley, 138 Ohio St. 574, 37 N.E. 2d 584—person appointed to prepare official arguments to be distributed by the Secretary of State concerning a proposed constitutional amendment.

In the case of Barr v. Matteo, supra, the U. S. Supreme Court extended absolute immunity to a member of the office of rent stabilization, and its reasoning in doing so was as follows:

> "We do not think that the principle announced in Vilas can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.
>
> "To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails. It is not the title of his office, but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' Spalding v. Vilas, supra, 161 U.S. [483] page 498, 16 S.Ct. [631] at p. 637 [40 L.Ed. 780] which must pro-

vide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

Barr v. Matteo, supra, adopted the eloquent reasoning of Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949):

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation * * *.

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him * * *."

█ In analysing the cases involved, we note that absolute privilege is extended to the public officer for making a statement while doing an act in the course of his official duties which he is directed or authorized specifically by law so to do. Qualified privilege is extended where the law does not specifically impose upon the public officer the duty or authority to make the statement, but because of the nature of his office and/or the interest of the public to be informed on the subject of the communication, the officer will not be liable unless his actions in making the statement were actuated by malice in fact or were not made in good faith. The latter view is applied by our Supreme Court in the Phoenix Newspapers, Inc. v. Choisser case, supra, as to defamatory statements in newspapers.

Appellant Russell Long's contractor's license had been revoked by the Registrar of Contracts on March 14, 1958. The Registrar's action had been appealed to the Superior Court when the conduct of the

defendants allegedly occurred—to wit, on December 17 and 19, 1958. Section 32–1159, subsec. C of the Arizona Revised Statutes, concerning appeals from the decisions of the Registrar of Contractors specifically provides that the order or decision shall remain in effect pending final determination of the matter unless the person appealing files with the Court a bond in an amount fixed by the court.

There is no dispute as to the fact that the bond or appeal in this matter was filed in court in February or March of 1959, some time after the alleged conduct on the part of the defendants.

It is inescapable that the Registrar's order revoking Long's Contractor's license was in effect on December 17 and 19, 1958, and had not been superseded.

Mertz's duties as engineer in charge of the Contracts and Specifications Division of the Arizona Highway Department included the distribution of plans, specifications, bid envelopes and proposals to those persons qualified under the law to receive the same.

The pertinent portions of Section 34–201 A.R.S. tell us how these are made available:

(Title omitted)

"A. Every agent shall, upon acceptance and approval of the working drawings and specifications, publish a notice to contractors of intention to receive bids and contract for the proposed work, and stating:

"1. The nature of the work required, the type, purpose and location of the proposed building, and where the plans, specifications and full information as to the proposed work may be obtained.

"2. That contractors desiring to submit proposals may obtain copies of full or partial sets of plans and specifications for estimate on request or by appointment.

\*     \*     \*     \*     \*     \*

"4. That the right is reserved to reject any or all proposals or to withhold the award for any reason the agent determines.

\*     \*     \*     \*     \*     \*."

Section 34–202, A.R.S. sets forth the persons who may submit proposals and bids:

(Title omitted)

"A. Proposals for construction of buildings or structures, or additions and alterations thereto, *shall be accompanied by bids* for all of the proposed work, *signed by a responsible contractor* \* \* \*." (Emphasis ours.)

Section 34–221, A.R.S. sets forth the person who shall receive the contract:

(Title omitted)

"A. The agent shall enter into a contract with the *lowest responsible bidder* whose proposal is satisfactory, \* \*." (Emphasis ours.)

Section 34–241, A.R.S. states certain qualifications for employment on public works, and lists preferences:

(Title omitted)

"A. When calling for bids for contracts for public work to be performed on behalf of the state or any political subdivision thereof, which will be paid for from public funds, *no bid shall be considered* for performance of a contract, including construction work, *which is not submitted by a bidder duly licensed as a contractor in this state.*" (Emphasis ours.)

Section 34–244, A.R.S. expressly makes inapplicable any provision of the article which conflicts with federal law or rule or regulation made under federal law pertaining to federal aid contracts.

It is undisputed that the job which Long desired to bid on, and on which Mertz refused him a bid envelope, was a federal aid project.

It is stated in appellant's brief, without citation of authority, that it is not required under federal law that a contractor be licensed in Arizona to bid on a federal aid job in this state. Appellee Mertz does not take issue with this.

It is Mertz's contention, however, that the carrying out of his duties requires the exercise of discretion in deciding whether the proposed bidder is a "responsible contractor", and that in doing so he has a right to refuse to furnish bid envelopes (although not plans and specifications) to persons he deems not "responsible".

In his deposition, Mertz stated, in substance, that he did not consider Long a responsible contractor because his contractor's license had been revoked by another agency of the State, the Registrar of Contractors, for failure to pay bills after due hearing. He stated the mere fact that Long didn't have a license in Arizona was not his reason for refusing to give him a bid envelope.

■ Without passing upon the question of whether the statement by Mertz that Long was not a qualified contractor is, in fact and in law, defamatory in the context and circumstances used, we feel that he is entitled to an absolute privilege in making the statement to the persons and under the circumstances that he did.

■ Although the statutes do not expressly give Mertz the duty or authority to make statements such as this, his job requires the making of such a finding, and to require him to be silent when asked his reason for his decision would be to encourage undercover, star-chamber, secret sessions of executive heads, who, for fear of civil responsibility in carrying out their duties, must remain mute when asked for an explanation of the reasons for their acts. To do so would be unrealistic and tend to create disrespect for public officials. The public interest requires an official to honestly respond when questioned concerning his acts which involve the exercise of discretion.

Having decided that absolute immunity from civil liability applies in this case, appellant Long's contention that Mertz acted "in excess of privilege" by using violent or intemperate language is not material, as this applies to the qualified, rather than the absolute privilege. Also, we might state that we do not believe the record would sustain this inference.

Appellant Long further urges that defendants, although originally acting in their official capacities, exceeded the same, and began "acting as aggressive collectors for Western Machinery Co." and thus acting as individuals not protected by privilege. We believe, however, that the pleadings, memoranda, affidavits, depositions and answers to interrogatories before the court on motion for summary judgment do not support plaintiff's position, and that the evidence, without exception, shows that Mertz acted only in his official capacity. Whether or not his conduct was such as to raise an inference of his having acted maliciously, and thus divesting himself of privilege, we need not decide, as this issue would be immaterial, as the proof in support thereof would be appropriate only if the court applied the doctrine of qualified privilege, which it does not.

Thus, the court below had no genuine issues of material fact before it, and properly entered summary judgment on Count I.

■ We will now proceed to the second and final issue in this appeal, that is, whether the lower court erred in directing a verdict in favor of defendants at the close of plaintiff's case. We believe it did not. The trial involved only Count II, concerning plaintiff's alleged loss of profit on the particular job, due to defendant Mertz's failure to permit Long to bid on the job. After reviewing the evidence presented by plaintiff in his case in chief, we believe the court was warranted in directing the verdict, as there was no evidence offered or admitted as to who was eventually awarded the contract and what his bid was. In absence of proof that Long's bid would have, in fact, been the low bid, he could not show himself to be entitled to be awarded the contract. Thus, he could not show damage.

Therefore, it is ordered affirming the judgment of the trial court.

CAMERON, Acting C. J., and DONO-FRIO, J., concurring.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge FRANK X. GORDON, Jr., was called to sit in his stead and participate in the determination of this decision.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8241. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.