499 P.2d 119

Pete BUGARIN et al., Appellants,

v.

WILSON SCHOOL DISTRICT NO. 7 OF
MARICOPA COUNTY, Arizona,
et al., Appellees.

No. I CA–CIV 1779.

Court of Appeals of Arizona,
Division 1,
Department A.

July 20, 1972.
Rehearing Denied Sept. 28, 1972.
Review Denied Oct. 24, 1972.

---

Renaud, Cook, Miller & Cordova, P. A., by Bradley J. Walsh, Phoenix, for appellants.

Moise Berger, Maricopa County Atty., by Albert Firestein, Chief Civil Deputy County Atty., for appellees.

STEVENS, Presiding Judge.

In this appeal we are called upon to review the correctness of the granting of a motion for summary judgment whereby the trial court ruled that alleged defamatory statements were made under the cloak of an absolute privilege.

The appellants are Pete Bugarin, Irene Vasquez, Romolo Griego, Jr., Lydia Gonzales and Armando Urias. They were the plaintiffs in the trial court, and they will be collectively referred to as the plaintiffs except where individual reference is necessary for clarity.

The appellees are Wilson School District No. 7 of Maricopa County, Arizona, Kendall Knox, Andrew Avila and Helen Williams, individually and as the Board of Trustees of Wilson School District, Pat Henderson and Marcella Henderson, his wife, Jack Null and Carolyn Null, his wife. They were the defendants in the trial court. The School District operated two primary schools, Wilson School and Skiff School. The defendants Knox, Avila and Williams were the duly elected qualified and acting trustees of the School District. The defendant Henderson was the superintendent employed by the School District. The defendant Null succeeded Henderson as superintendent after the events in question in this case. Prior to his appointment as superintendent, the defendant Null was a member of the administrative staff of the District.

The plaintiffs were teachers regularly employed by the School District.

Apparently on or about 16 July 1969, we are not certain as to the exact date, a recall petition which addressed itself to the recall of trustees Knox, Avila and Williams was filed with the Maricopa County School Superintendent who, pursuant to A.R.S. § 19–209, subsec. B, par. 4, called the recall election for 22 August 1969.

On or about 23 July 1969 a 4-page single-spaced letter-size document came into being. This was entitled:

Wilson School Board Recall
Sponsored by
Citizen's Committee For Quality Education

This document will hereafter be referred to as the "Committee's statement." It purported to be prepared by:

Citizens Committee For Quality Education
Lazaro Saucedo, Chairman, 2419 S. 27th place
Hilda Valle, Secretary, 1914 E. Cocopah (254–4608)
Fr. Ernesto Sanchez, OFM, Sacred Heart Church (treas.)
John Carbajal, Vice-Treasurer, 253–6635.
The Committee's statement advised that:

"The following Organizations have pledged their support to this Recall Action of the present Wilson District School Board

"League of United Latin-American Citizens

Arizona Association of Mexican-American Educators

American G. I. Forum

Chicanos por La Causa

Southside Benefit Association

Mexican American Student Organization
Other Organizations are being contacted

\*   \*   \*   \*   \*   \*

"The following persons can be contacted for further information:

"Fr. Frank Yoldi, OFM, Sacred Heart Church

Frank Carrillo, Phones 562–3441 or 966–7023

Joe Martinez, 829 South 20th Street, Phone 258–4668."

Therein the board members were criticized for not hiring more Mexican-American teachers. The Committee's statement contained the following:

"There are five teachers of Mexican-American descent on the staff. The total teachers on the staff has been 102."

The Committee's statement was critical of what was declared to be discrimination against Mexican-American teachers both in the matter of hiring and in the matter of promotion. While the main thrust of the Committee's statement was directed toward Superintendent Henderson, it urged the recall of the board in order to secure Hender-

son's removal. The Committee's statement further declared:

"Let's be honest. The whole mess lies with Henderson. The present Board, though, is responsible through their negligence and this is why they should be REPLACED. Henderson has dictated to the Board. Why? Is there a conflict of interest by the fact that Mrs. Williams, a board member gets paid for driving a district school bus? Have they been afraid to speak up to Henderson because of the many long trips they have taken all over the country at the expense of the district? Has Mr. Avila kept quiet so as not to disturb the feelings of the other two Anglo Board members with the hope of eventually replacing Henderson as Superintendent, himself?????

\*      \*      \*      \*      \*      \*

"P.S. Through the grapevine we have information that the Wilson District administration has used school employees and possibly district automobiles in the past to bring voters to the polls in previous board elections. We must 'focus' our *watchful eye* on this situation."
· (Emphasis theirs.)

The foregoing was the subject of a newspaper article in the 25 July 1969 issue of the Phoenix Gazette, an evening daily newspaper.

The Board instructed the superintendent to investigate and to prepare a response. The record discloses that the sole author was Superintendent Henderson. He attended a Board meeting on 29 July at which meeting Trustees Knox and Williams were present and Trustee Avila was absent. The document so prepared by Superintendent Henderson is 2½ pages of single-spaced letter-size paper. The document was adopted by the members of the Board attending the meeting, was made a part of its minutes and was the subject of a 30 July newspaper article, also published in the Phoenix Gazette. The document prepared and so adopted is entitled:

Wilson District Board of Trustees
Rebuttal to: Citizen's Committee for Quality Education

This document will hereinafter be referred to as "the rebuttal." It is the rebuttal which is the basis of the libel action here in question. The rebuttal addressed itself to many of the matters asserted in the Committee's statement. As hereinbefore quoted the Committee's statement specified that "[t]here are five teachers of Mexican-American descent on the staff." The rebuttal contained the following which gave rise to the present litigation:

"The allegations and innuendos that have been aimed at the Board of Trustees and Administration are the result of a small number of Mexican-American teachers, who were originally dissatisfied because their performance as teachers was about to be evaluated. They call themselves Citizen's for Quality Education, but the entire dissident views of five teachers have now been carefully developed into a Civil Rights movement. The very thing that other ethnic groups have been fighting for years, ironically enough, is now being advocated by the dissidents. They are encouraging segregated schools for Mexican-Americans, when they advocate only Mexican-American teachers for Mexican-American students.

\*      \*      \*      \*      \*      \*

"The dissidents' criticisms and allegations are grossly exaggerated, distorted, taken out of context, and are a direct attempt to create dissention among ethnic groups and constituents of the district."

The five Mexican-American teachers were frequently referred to in the rebuttal as "the dissidents."

There appears to be no question but that the plaintiffs are the Mexican-American teachers referred to in the Committee's statement and in the rebuttal. While the names of the opposition recall candidates are not reflected in the file, there is no

question but that none of the plaintiffs was a candidate at the recall election.

The plaintiffs were active in conferring with those supporting the recall in the matter of the claimed discrimination in the hiring and promotion practices of the Board.

## THE DEFENDANTS AVILA AND NULL

■ The record is silent as to any participation in the preparation and approval of the rebuttal by the defendants Avila and Null. The rebuttal was prepared by the then Superintendent Henderson and approved by Trustees Knox and Wilson. Superintendent Henderson resigned on 21 August 1969 to accept another position and Null was appointed as his successor. We hold that under any theory, the summary judgment in favor of the defendants Avila and Null must be and it is hereby affirmed.

## PLAINTIFFS' PARTICIPATION

■ The plaintiffs deny that any of them was a member of the Committee. Plaintiffs deny any active participation in the drafting of the Committee's statement other than that the Plaintiff Bugarin did the typing. It is clear that part of the matters set forth in the Committee's statement had their source in conferences with the plaintiffs and that the plaintiffs were referred to in the Committee's statement. Of all the organizations named in the Committee's statement as having pledged their support to the recall, the plaintiff Griego was a member of the League of United Latin-American Citizens and all of the plaintiffs except Urias were members of the Arizona Association of Mexican-American Educators of which organization Bugarin was the President. While it is true that the defendants are not to be given free rein to make statements about persons who had no connection with the problems facing the District, it is our opinion that the plaintiffs were so connected

with the problems and the preparation of the Committee's statement as to be the proper subject of the rebuttal. In this connection we cite Lombardo v. Stoke, an opinion of the Court of Appeals of New York, 18 N.Y.2d 394, 276 N.Y.S.2d 97, 222 N.E.2d 721 (1966). The situation facing this Court is quite similar to that treated in Lombardo. In Lombardo the Court held that teachers who were allegedly defamed were not entitled to recover under circumstances not dissimilar from those now under consideration.

In the case at bar the plaintiffs helped to create the occasion out of which the rebuttal was fashioned.

## THE PRIVILEGE

The defendants contend, because of their public position, that they are entitled to an absolute privilege in replying to the criticism of their carrying out their public office. The plaintiffs agree that a privilege is present, but urge that at most the defendants enjoyed only a qualified privilege and cite Connor v. Timothy, 43 Ariz. 517, 33 P.2d 293 (1934). In Connor the School Board defendant pleaded a qualified privilege and with this the Supreme Court agreed. From our reading of Connor we do not find that our Supreme Court ruled out an absolute privilege.

In addition to the New York case of Lombardo, the following defamation cases which arose in Arizona have been decided on motions for summary judgment upholding the absolute privilege. Davis v. Littell, 398 F.2d 83 (9th Cir. 1968), cert. denied, 393 U.S. 1018, 89 S.Ct. 621, 21 L.Ed.2d 562; Long v. Mertz, 2 Ariz.App. 215, 407 P.2d 404 (1965) and Klahr v. Winterble, 4 Ariz.App. 158, 418 P.2d 404 (1966). In Long the issue was whether the absolute privilege could extend to other than the highest executive officers. The Court held that the occasion justified the statement and that the absolute privilege extended to an engineer in charge of the

contracts and specifications division of the Arizona Highway Department.

In Long it was stated that it was not the title to the office but the duties of the office which determined the presence of absolute privilege. Trustees Knox and Williams and Superintendent Henderson were being attacked in connection with the official performance of their public trust. There are few greater responsibilities in public life than the operation of our public schools. The occasion arose by reason of the attack contained in the Committee's statement. The rebuttal was within proper bounds of a response to the Committee's statement.

We affirm the summary judgment as to all appellees.

CASE and JACOBSON, JJ., concur.