542 P.2d 1133

Danny MARTINEZ and Azzlee Martinez, husband and wife, Appellants,

v.

Harold J. CARDWELL and Dorothy Cardwell, husband and wife, and the State of Arizona, Appellees.

No. 2 CA–CIV 1896.

Court of Appeals of Arizona, Division 2.

Nov. 18, 1975.

**254**

Harry Bagnall, Coolidge, for appellants.

Bruce E. Babbitt, The Atty. Gen. by Robert J. Bruno, Sp. Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

KRUCKER, Judge.

This was an action by appellants, Danny and Azzlee Martinez, against appellees, Harold and Dorothy Cardwell and the State of Arizona, for slander. Appellees moved for summary judgment in the trial court on the ground that the defamatory statements uttered by appellee Harold Cardwell (hereinafter referred to as "Cardwell") were absolutely privileged. The trial court granted the motion and rendered summary judgment for appellees. From the judgment appellants have brought this appeal.

The pleadings and depositions reveal the following facts. Cardwell is the Superintendent of the Arizona State Prison. At all times material to this action, appellant Danny Martinez (hereinafter "appellant") was employed as a prison guard. On October 10, 1973, Cardwell directed Major Joe Martinez, a prison employee, to bring appellant into his office. When appellant arrived, Cardwell asked him in the presence of Major Martinez, "What did you do with that weed?" Appellant asked if he was referring to the marijuana that had recently been found in the juvenile area. Cardwell said no, that he was referring to the 20 packs of marijuana appellant had brought into the prison. He told appellant that inmates had told him appellant had transported marijuana into the prison. Appellant denied that he had done so. Cardwell then asked, "What are you doing, having pot parties at your home?" He told appellant he had information to that effect from police intelligence sources. Appellant replied that he was not having "pot parties," and that he had foster children in his home. Cardwell stated in his deposition that he had made no independent investigation of whether appellant was transporting marijuana into the prison or smoking it at home.

On January 23, 1974, Major Martinez reported to Cardwell that appellant had been asleep on guard duty. Cardwell summoned appellant to his office and in the presence of Major Martinez, Dwight Carey and Dale Davis, asked appellant if he had been drinking or smoking marijuana. Appellant asserted that he had not. Cardwell then pointed his finger at appellant,

slammed his desk drawer, and stated, "I still believe you had something to do with that marijuana." He then said, "I told Joe [Major Martinez] to place you on the towers because you could not be trusted in the yard." At the end of the meeting, Cardwell suspended appellant for 15 days.

Appellant contends on appeal that Cardwell's insinuation that he conducted "pot parties" in his home was outside the scope of any privilege Cardwell may have had, and that the trial court therefore erred in granting summary judgment in Cardwell's favor. Before we pass on this question, we deem it proper to examine whether the privilege to be accorded to Cardwell's statements should be absolute or qualified.

The distinction between absolute and qualified privilege turns on the presence or absence of "actual malice," defined as personal spite, hatred, or ill will. *Robinson v. Home Fire & Marine Ins. Co.,* 244 Iowa 1084, 59 N.W.2d 776 (1953). Absolute privilege renders the defendant absolutely immune from civil liability for his defamatory statements. On the other hand, qualified privilege protects defendant from liability only if he uttered the defamatory statements without actual malice. *Robinson,* supra.

Some of the earliest decisions on the subject of absolute privilege limited it to judicial proceedings, legislative proceedings, matters involving military affairs, and acts of state. E. g. *Tanner v. Stevenson,* 138 Ky. 578, 128 S.W. 878 (1910); *Raymond v. Croll,* 233 Mich. 268, 206 N.W. 556 (1925); *Hemmens v. Nelson,* 138 N.Y. 517, 34 N.E. 342 (1893). See, *Collins v. Oklahoma State Hospital,* 76 Okla. 229, 184 P. 946 (1916). Later decisions, however, extended the absolute privilege for executive communication far below the cabinet level. See, e. g., *Taylor v. Glotfelty,* 201 F.2d 51 (6th Cir. 1952); *Catron v. Jasper,* 303 Ky. 598, 198 S.W.2d 322 (1946); *Powers v. Vaughan,* 312 Mich. 297, 20 N.W.2d 196 (1945); *Bigelow v. Brumley,* 138 Ohio St. 574, 37 N.E.2d 584 (1941);

*Hughes v. Bizzell,* 189 Okla. 472, 117 P.2d 763 (1941); *Sanford v. Howard,* 185 Okla. 660, 95 P.2d 644 (1939); *Montgomery v. City of Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958). Cf. *Hardy v. Vial,* 48 Cal.2d 577, 311 P.2d 494 (1957).

*Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), solidified the trend toward extending the absolute privilege to lesser executive officials. In *Barr,* two former employees of the Office of Rent Stabilization sued the office's Acting Director for libel in connection with a press release issued at his direction. The court held the press release was within the "outer perimeter" of the Acting Director's "line of duty" and that the defamatory statements contained therein were absolutely privileged. The principal opinion stated:

"It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U. S. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441.

The court then quoted from *Gregoire v. Biddle,* 177 F.2d 579 (2nd Cir. 1949) in part as follows:

" 'The justification for [extending absolute privilege to executive officials] is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . . In this instance it has been thought in the

end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. . . .' *Gregoire v. Biddle,* (C.A. 2 N.Y.) 177 F.2d 579, 581." 360 U.S. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441–42.

Although *Barr* was an expression of federal judicial policy and was not binding on the states with respect to their own executive officials, some state decisions adopted its rationale. E. g., *Roberts v. Lenfestey,* 264 So.2d 449 (Fla. 1972); *McNayr v. Kelly,* 184 So.2d 428 (Fla.1966); *Sheridan v. Crisona,* 14 N.Y.2d 108, 249 N.Y.S.2d 161, 198 N.E.2d 359 (1964); *Duffy v. Kipers,* 26 A.D.2d 127, 271 N.Y.S.2d 338 (1966); *Shade v. Bowers,* 93 Ohio L.Abs. 463, 199 N.E.2d 131 (Ohio Com.Pleas 1962). Among them was *Long v. Mertz,* 2 Ariz.App. 215, 407 P.2d 404 (1965), a decision of Division One of this court. In *Long* the defendant was the engineer in charge of contracts and specifications at the Arizona Highway Department. Plaintiff was a contractor whose license had been revoked for willful nonpayment of an equipment rental charge. Defendant refused to provide plaintiff with plans, specifications and other materials necessary for plaintiff to submit a bid on an upcoming job. When plaintiff later confronted him and asked him why, he replied in the presence of others, "You are not a qualified contractor." Plaintiff sued for slander and the trial court gave summary judgment for defendant. Quoting at length from *Barr v. Matteo,* supra, Division One of this court affirmed, holding that defendant's statement was absolutely privileged. It stated:

"Although the statutes do not expressly give [defendant] the duty or authority to make statements such as this, his job requires the making of such a finding, and to require him to be silent when asked his reason for his decision would be to encourage undercover, star-chamber, secret

sessions of executive heads, who, for fear of civil responsibility in carrying out their duties, must remain mute when asked for an explanation of the reasons for their acts. To do so would be unrealistic and tend to create disrespect for public officials." 2 Ariz.App. at 222, 407 P.2d at 411.

*Long* has been followed by the Division One case of *Bugarin v. Wilson School District No. 7 of Maricopa County,* 17 Ariz.App. 541, 499 P.2d 119 (1972),[1] and cited by Division One as stating Arizona Law in the case of *S. H. Kress and Company v. Self,* 22 Ariz.App. 230, 526 P.2d 754 (1974). It is now apparently read for the proposition that any state executive official who utters defamatory statements in the course of and relating to his duties is protected by an absolute privilege.

We have carefully examined the cases and authorities on the subject of the privilege to be accorded to communications of state executive officials. On the basis of that examination we have come to the conclusion that extending the absolute privilege to state executive officials cannot be justified. We are not bound by *Long* and we respectfuly decline to follow it.

*Barr v. Matteo,* supra, on which *Long* relied heavily, has been severely criticized on numerous grounds. See, Prosser on Torts, 4th Ed. Sec. 114, at 783–84. Perhaps the most serious criticism of the *Barr* rationale is that it is based on a factual premise with no demonstrable support. According to *Barr,* absolute immunity aids the effective functioning of government by leaving executive officials "free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties." 360 U.S. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441. Justice Brennan, in his dissenting opinion in *Barr,* criticized this assumption as a "gossamer web selfspun without a scintilla

1. *Bugarin* incorrectly cites our decision in *Klahr v. Winterble,* 4 Ariz.App. 158, 418 P. 2d 404 (1966) as supporting the rule in *Long.*

of support to which one can point." 360 U.S. at 590, 79 S.Ct. at 1349, 3 L.Ed.2d at 1451. We agree with Handler and Klein, The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv.L.Rev. 44 (1960), that:

"[t]he attitude of the courts toward the proposition that absolute privilege is essential to executive freedom of action seems to manifest an unfortunate tendency to be mesmerized by resounding phrases and to ignore the fallibility of a priori notions about psychological phenomena." 74 Harv.L.Rev. at 50, n. 24.

The rule of absolute privilege, which denies all recovery for malicious defamation, should not be extended beyond its traditional limited scope on the basis of pure speculation.

Another argument in favor of according an absolute privilege to executive officials is set out in *Long* (quoting from *Gregoire v. Biddle,* supra):

" . . . it is impossible to know whether the claim [for defamation] is well founded until the case has been tried, and . . . to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." 2 Ariz.App. at 220, 407 P.2d at 409.

*Accord, Montgomery v. City of Philadelphia,* supra. We reject the notion that an executive official can avoid trial only by asserting absolute privileg.. The defense of qualified privilege will often be amply sufficient to mandate summary judgment in favor of the defendant.

We hold accordingly that state executive officials are protected from liability for defamation in the course of their duties by a qualified privilege only. We have reviewed the record and have found nothing whatever that indicates Cardwell defamed appellant out of personal spite, hatred, or ill will. The mere fact that Cardwell made no independent investigation of appellant's activities is insufficient to raise a genuine issue as to his motives. The qualified privilege therefore applies in this case.

Appellant contends Cardwell's insinuation that he held "pot parties" at his home was beyond the scope of Cardwell's duties and hence was not privileged. We disagree. Under A.R.S. Sec. 31–202 the Superintendent of the Arizona State Prison has the duty to appoint necessary employees. Surely the Superintendent may legitimately inquire whether the employees he has hired to guard felons are themselves in the habit of breaking the law at home. Cf., A.R.S. Sec. 31–203, which provides that a single act of intoxication by a prison employee through the use of liquor is sufficient to justify discharge. We think all the defamatory statements made by Cardwell were qualifiedly privileged as a matter of law. Summary judgment for appellees Harold and Dorothy Cardwell was therefore proper.

Since appellants' claim against the State of Arizona was based solely on *respondeat superior,* summary judgment in favor of the state was also proper.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.