565 P.2d 900

**Arthur GRANDE, Sr., Appellant,**

v.

**The STATE of Arizona, V. L. Nielsen, Jr., Bob Kennedy, John N. Hazelett, L. Waldo DeWitt, Gary Nelson, John O'Dowd and Bernard H. Keegan, Appellees.**

**No. 1 CA–CIV 3057.**

Court of Appeals of Arizona, Division 1, Department A.

March 22, 1977.

Rehearing Denied June 1, 1977.

Review Denied June 28, 1977.

Russo, Cox, Dickerson & Cartin, P. C. by Thomas G. Cox, Tucson, for appellant.

Jennings, Strouss & Salmon by John S. Hobbs and Jack E. McCall, Phoenix, for appellees.

OPINION

HAIRE, Judge.

The issue in this case is whether the defense of absolute privilege is available to the defendants, officials of the Arizona State Tax Commission, in an action against them for libelous statements appearing in the Notice of Dismissal which they filed with the State Personnel Board in connection with a hearing on plaintiff's discharge.

The plaintiff, Arthur Grande, had been employed as a tax collector for the state of Arizona for several years when he was indicted at the end of September 1971, for attempting to influence a grand jury witness. On November 1, 1971, the State Tax Commission terminated his employment. Mr. Grande appealed that termination, and before the scheduled hearing on the matter the defendant officials[1] prepared and filed

---

1. The specific participation of the defendants was as follows:
   The Amended Notice of Dismissal was prepared by Mr. John O'Dowd, in his capacity as

Assistant Attorney General representing the State Tax Commission. Mr. V. L. Nielsen, as the Executive Secretary of the Arizona Tax Commission, was the person who signed the

with the Arizona State Personnel Commission an Amended Notice of Dismissal containing the specific reasons for Grande's termination.

It is these allegations (of dishonesty; wilfully, knowingly and corruptly endeavoring to influence a witness before the grand jury; and inefficiency in the performance of his duties with the Tax Commission) in the Notice of Dismissal which form the basis of the present action. Plaintiff Grande contends that these statements were libelous, and that they were made by the defendants with malice and knowledge of their falsity. Defendants answer that the questions of whether the statements were libelous or were made maliciously are irrelevant, since under Arizona law they have an absolute privilege regarding statements made in the performance of their official duties. The trial court granted defendants' motion for summary judgment based on this assertion of absolute privilege.

Appellant Grande makes two arguments in opposition to defendants' claim of absolute privilege. The first is that the Arizona cases which have granted an absolute immunity have done so in the context where the individual or individuals were sued for statements made while acting in a judicial or quasi-judicial capacity. Appellant argues that where the claimed immunity is "executive" or "official" immunity rather than judicial, the protection afforded is not

absolute, but is qualified, being limited to a situation where the defendant has acted in good faith.

Arizona courts have described in several ways the relationship between the context in which the libelous statements are made and the type of immunity or degree of privilege which may be granted. The early cases were based on the immunity traditionally granted to statements made during judicial proceedings.

In *Wilson v. Hirst,* 67 Ariz. 197, 193 P.2d 461 (1948), in an action by discharged state hospital employees against members of the state hospital board, the court stated the rule protecting judges and extended its protection to other officials, stating:

> "Nor is this rule of judicial immunity restricted in its protection to the judges proper, but extends also to any other official who performs a judicial function while acting in a quasi-judicial capacity." 67 Ariz. at 199, 193 P.2d at 462

The court held that, so long as the board was acting in compliance with the law and so "within its jurisdiction" in conducting the hearing on the discharge, the members of the board would not be civilly liable even if they had acted corruptly or maliciously.

The opinion, however, provides little guidance as to what constitutes a judicial or quasi-judicial function.[2] The reasons given by the court would equally apply to allow immunity to any government official.

Amended Notice of Dismissal. Bob Kennedy, John M. Hazelett and L. Waldo DeWitt were members of the Arizona Tax Commission. The Amended Notice of Dismissal was based in part upon information supplied by Defendant Keegan, then Director of the Tucson office of the Arizona Tax Commission. Attorney General Gary Nelson took no active part in the preparation of the Amended Notice of Dismissal and was joined as a party defendant in his capacity as Attorney General for the State of Arizona; there is no allegation of any knowledge, concurrence, or wrongdoing on his part. No allegation is made against the State of Arizona, which would be liable only if the defendant officials are, on a theory of *respondeat superior.*

2. While the court in *Wilson* recognized the problem, its language actually seemed to equate judicial functions with non-ministerial ones. 67 Ariz. at 201, 193 P.2d at 464:

> "We have no hesitancy in extending this rule, [absolute immunity, without regard to malice] there applied to a justice of the peace (the judge of a court not of record), to public officials who are required to sit in a quasi-judicial capacity, providing always that they act strictly within the jurisdiction conferred upon them by law. The precise line of distinction between judicial and ministerial acts is difficult to draw and cannot be easily stated. See Restatement, Torts, section 585 and *Sweeney v. Young* [*Sweeney v. Young,* 82 N.H. 159, 131 A. 155, 42 A.L.R. 757], *supra.* But certainly where, as here, the Board was required *to review and determine the cause of discharge,* the performance of such a duty is clearly a judicial function."

"Paraphrasing a statement appearing in *Pearson v. Reed,* 6 Cal.App.2d 277, 44 P.2d 592, 597, we can also say that we are well aware of the fact that in thus shielding public officers, who act strictly within their jurisdiction in a quasi-judicial capacity, against actions of this sort the rule may work hardship and injustice in individual cases. But there is no middle ground to be occupied in the matter; either all of such suits are to be tolerated or none. The court may occasionally be confronted with the not-unusual situation that calls for subordination of the rights of the few to the interests of the whole body of the public. The doctrine of immunity is not for the benefit of the few who might otherwise be compelled to respond in damages. It is for the benefit of all to whom it applies, *that they may be free to act in the exercise of honest judgment, uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.*" (Emphasis added). 67 Ariz. at 202, 193 P.2d at 464

However "quasi-judicial" may be defined, *Wilson v. Hirst* did seem to limit the immunity to statements made during functions of a quasi-judicial nature.

A major contribution to the developing law of executive privilege occurred in 1959, when the United States Supreme Court decided *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). That decision has become a landmark case in the area of privilege for public officials against suits for libel based on statements made in the course of their duties, and several states have adopted its rationale to allow immunity for their own officials.

In *Barr v. Matteo, supra,* the Supreme Court decided that consideration of public welfare demanded that government officials be immune from the threat of libel suits even where malice was alleged:

"The reasons for the recognition of the privilege have been often stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441

The Supreme Court refused to confine the absolute privilege to officials of high rank, but stated:

"We do not think that the principle . . . can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy." (Footnotes omitted). 360 U.S. at 572, 79 S.Ct. at 1340, 1341, 3 L.Ed.2d at 1442

While *Barr v. Matteo* utilized the policy reasons for absolute immunity developed in the judicial immunity cases, it held that the absolute privilege applied to actions taken within the perimeter of *all* executive duties and did not confine the privilege to those which could be classified as judicial or quasi-judicial.

Division One of the Arizona Court of Appeals relied on the reasoning of *Barr v. Matteo, supra,* and cases from other jurisdictions in *Long v. Mertz,* 2 Ariz.App. 215, 407 P.2d 404 (1965) to extend absolute immunity to the defendant, an official of the Arizona Highway Department, who had refused to furnish a bid envelope to the plain-

tiff and publicly stated that plaintiff "was not a qualified contractor."

"Without passing upon the question of whether the statement by Mertz that Long was not a qualified contractor is, in fact and in law, defamatory in the context and circumstances used, we feel that he is entitled to an absolute privilege in making the statement to the persons and under the circumstances that he did.

"Although the statutes do not expressly give Mertz the duty or authority to make statements such as this, his job requires the making of such a finding, and to require him to be silent when asked his reason for his decision would be to encourage undercover, star-chamber, secret sessions of executive heads, who, for fear of civil responsibility in carrying out their duties, must remain mute when asked for an explanation of the reasons for their acts. To do so would be unrealistic and tend to create disrespect for public officials. The public interest requires an official to honestly respond when questioned concerning his acts which involve the exercise of discretion.

"Having decided that absolute immunity from civil liability applies in this case, appellant Long's contention that Mertz acted 'in excess of privilege' by using violent or intemperate language is not material, as this applies to the qualified, rather than the absolute privilege." 2 Ariz.App. at 222, 407 P.2d at 411

Following the issuance of Division One's opinion in *Long v. Mertz, supra,* the Arizona Supreme Court in 1971 affirmed that Arizona law did follow *Barr v. Matteo* in granting an absolute privilege from suit for actions taken by a public official acting within the scope of his duties. *White Mountain Apache Indian Tribe v. Shelley,* 107 Ariz. 4, 480 P.2d 654 (1971).

In a much cited passage, *Long v. Mertz* drew the distinction between privilege qualified by good faith and absolute privilege, stating, as in *Barr v. Matteo,* that absolute privilege was available where the libelous statements were made in the course of specifically authorized duties:

"In analysing the cases involved, we note that absolute privilege is extended to the public officer for making a statement while doing an act in the course of his official duties which he is directed or authorized specifically by law so to do. Qualified privilege is extended where the law does not specifically impose upon the public officer the duty or authority to make the statement, but because of the nature of his office and/or the interest of the public to be informed on the subject of the communication, the officer will not be liable unless his actions in making the statement were actuated by malice in fact or were not made in good faith."

The Arizona Supreme Court, citing *Barr v. Matteo,* in *White Mountain Apache Tribe, supra,* restated this distinction as a simple "scope of duty" question:

"A public official is entitled to immunity from suit for actions taken by him within the scope of his duties as a public official. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The actions of a public official can be the basis for an individual suit against the officer as an individual if his actions are beyond his statutory authority." 107 Ariz. at 7, 480 P.2d at 657

Subsequently, Division One of the Court of Appeals in *Bugarin v. Wilson School District No. 7 of Maricopa County,* 17 Ariz. App. 541, 499 P.2d 119 (1972) applied the scope of official duties test, again without reference to judicial or quasi-judicial function as a requisite for absolute immunity, and found that under the circumstances the defendant school board members in that case were entitled to the protection afforded by an absolute privilege, *see also, S. H. Kress & Co. v. Self,* 22 Ariz.App. 230, 526 P.2d 754 (1974).

We have gone into some detail in discussing prior Arizona decisions extending the defense of absolute privilege to a government official for actions taken within the scope of his duties as a public official. We have done so because, in *Martinez v. Cardwell,* 25 Ariz.App. 253, 542 P.2d 1133 (1975), Division Two of the Court of Appeals came

to a contrary result, expressly declining to follow the Division One decision of *Long v. Mertz, supra.* In *Martinez,* Division Two held that state officials are protected from liability for defamation in the course of their duties by a qualified privilege only— that an absolute privilege would never be available. In ruling upon the issue, the court in *Martinez* did not cite or discuss the Arizona Supreme Court's decision in *White Mountain Apache Indian Tribe v. Shelley, supra,* which stated the distinction as drawn in *Long v. Mertz,* cited *Barr v. Matteo* which also allowed the privilege, and thereby inferentially approved this Court's Opinion in *Long v. Mertz.*[3] Suffice it to say, without focusing upon the merits of the *Martinez v. Cardwell* position, that we now deem the issue foreclosed to further evaluation on the Court of Appeals level by the Arizona Supreme Court's opinion in *White Mountain Apache Indian Tribe v. Shelley, supra,* and therefore we proceed to apply to this case the principles summarized in *Long v. Mertz.*

To apply this law to the case before us, since there is no allegation that any of the defendants acted beyond the scope of their official duties but rather are sued for taking these actions in their official capacities, it would seem that Arizona law requires the granting of an absolute immunity. Appellant argues that "declaring someone guilty of a crime he is merely under an indictment for" is not part of defendants' duties. But that argument, if applied, would void the absolute privilege in all cases where malice or abuse of discretion is alleged, because public duties never specifically authorize the officer to perform them with malice or bad faith. The real question which tests the privilege is whether the underlying activity is within the scope or perimeter of the official's duty, and not the manner of its performance.

We observe additionally that due process considerations of fairness and specific Arizona statutory provisions[4] require that a discharged employee of the state be allowed a hearing on his discharge and notice of the reasons for it. Since reasons for discharge would often constitute libel, it would impose an intolerable burden to subject those giving the reasons to the threat of a lawsuit wherein they would have the burden of establishing their own good faith to the satisfaction of the jury.

We note tangentially that even analysed according to appellant's own argument, insofar as the hearing on the discharge would be a judicial or quasi-judicial proceeding, the reasons in the notice of dismissal would be a part of such proceeding and so absolutely privileged in a suit for libel under *Wilson v. Hirst, supra.*

The second argument advanced is that it is inconsistent for Arizona to have abolished the doctrine of sovereign immunity, in *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P.2d 107 (1963), for negligence by state employees and yet to grant an immunity where the harm is afflicted intentionally or with malice. Since *Long v. Mertz* and *White Mountain Apache Indian Tribe v. Shelley* were decided after *Stone,* whatever conflict inheres in the situation would seem to have been resolved against appellant by prior law. We do note that both the United States Supreme Court in *Barr v. Matteo* and the Arizona court in *Long v. Mertz* recognize that by granting this immunity valid opposing public interests are denied, and that individual mem-

---

3. *White Mountain Apache Indian Tribe v. Shelley* cited *Davis v. Littell,* 398 F.2d 83 (9th Cir. 1968), which had expressly relied on *Long v. Mertz, supra.*

4. A.R.S. § 38–910 (now A.R.S. § 41–785), in effect during these events, required:

"A. Any employee who is dismissed, suspended or demoted, after completing his probationary period of service as provided by the rules of the commission, shall have the

right to appeal to the commission not later than thirty days after the effective date of such action. *The employee shall be furnished with specified charges in writing when the action is taken.* Such appeal shall be in writing and shall be heard by the commission within thirty days after its receipt. The commission shall furnish the employing agency with a copy of the appeal in advance of the hearing." (Emphasis added).

bers of the public will sustain harms which will be denied redress. In balancing the inhibition to government officials in the discharge of their functions against the danger of wrongs to individuals, both the United States Supreme Court and the Arizona courts have decided that the overall benefit accruing to the public outweighs the possible harms. In balancing the interests, the state may well decide to abolish sovereign immunity generally yet retain an individual privilege for certain types of actions where it is thought particularly important for the official to act without fear or inhibition.[5] It does seem that there may be a less compelling public interest which would allow an official whose conduct a jury may find negligent to be exposed to the rigors of a trial than the interest protected here, in allowing the official a free and forthright expression of his ideas immune from the threat of such exposure.

For these reasons, therefore, we hold that the defendants had an absolute privilege to give the reasons for plaintiff's discharge, and therefore the issue of malice is irrelevant. The decision of the trial court granting summary judgment for the defendants is affirmed.

FROEB, C. J., and JACOBSON, J., concur.

---

**5.** The federal system has abolished sovereign immunity for negligent torts, see, e.g., The Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 *et seq.*, yet *Barr v. Matteo* granted the official complete immunity. Similarly, both conditional immunity, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and abso-lute immunity, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, (1976) have been recognized in suits under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983, the statutory scheme which allows individuals to sue government officials for deprivation of constitutional rights.