566 P.2d 1038

Frank PETRONI and Lillian Petroni, husband and wife, Appellants and Cross Appellees,

v.

The BOARD OF REGENTS in the State of Arizona, a body corporate, Albert Weaver and Adeline Weaver, husband and wife, Robert L. Hamblin and "Roberta" Hamblin, husband and wife, Hermann K. Bleibtreu and Carol Bleibtreu, husband and wife, Philip Hammond and Sandra Hammond, husband and wife, Appellees and Cross Appellants.

No. 2 CA–CIV 2332.

Court of Appeals of Arizona, Division 2.

March 29, 1977.

Rehearing Denied May 26, 1977.

Review Denied June 14, 1977.

Franklin & Feulner by George Feulner, William Messing, Tucson, for appellants and cross appellees.

Fish, Briney, Duffield & Miller, P. C., by Richard Duffield, Bruce E. Babbitt, Atty. Gen., by Jack J. Rappeport, Sp. Asst. Atty. Gen., associated counsel, Tucson, for appellees and cross appellants.

## OPINION

RICHMOND, Judge.

Appellant Frank Petroni was employed in 1970 for a term of one year as an assistant professor in the department of sociology at the University of Arizona, and served in that capacity through the academic year 1974–75 under a series of annual renewals of his contract. During 1973–74 he was denied promotion and tenure. Appellants thereafter commenced an action in four counts based on events surrounding the decision denying promotion and tenure. The first three counts sought damages on the various theories of defamation, deprivation of civil rights, and tortious interference with employment, respectively. The fourth count, added later by amendment, sought an order reinstating Petroni to his position at the university.

Named as defendants were the Board of Regents as governing body of the university; Albert Weaver, the executive vice president whose recommendation resulted in the denial of promotion and tenure; Hermann K. Bleibtreu, then dean of the College of Liberal Arts; Robert L. Hamblin, head of the department of sociology, and Philip Hammond, a member of the sociology department.[1]

At the conclusion of appellant's case, the trial court directed a verdict in favor of appellees on each of the first three counts for damages. Appellees then rested without offering any additional evidence, and the trial court directed a verdict in favor of appellants on the fourth count but, instead of ordering reinstatement, ordered "that the University of Arizona shall afford [Petroni] a due process hearing in accordance with the University's rules and regulations" on the reasons for denial of promotion and tenure. Petroni has appealed from the judgment on the directed verdict on the three damage counts and from so much of the remainder of the judgment as denies his request for reinstatement. We believe the trial court reached the right result, for reasons hereinafter discussed with respect to each individual count.

## DEFAMATION

■ Petroni's claim for damages for defamation is based on the publication of an unsigned "minority report" prepared by Hamblin following a meeting of the tenured members of the department of sociology to consider Petroni's application for promotion and tenure. The report was forwarded to Bleibtreu and in turn to Weaver. The report was critical of Petroni's research, teaching, and scholarly articles, which had been published in what the report described as "second or third rate journals." Bleibtreu's negative recommendation to Weaver was strongly influenced by the report, which also played a significant role in Weaver's decision. Petroni had been told of a favorable vote on his application, and was unaware of the existence of any minority report before being advised of the final decision.

Prior to the meeting on Petroni's application, Hamblin by mailgram had requested the vote of two tenured department members who would not return from temporary leave in time to participate, and had forwarded to them reprints of Petroni's scholarly articles. He also had been informed that a member who would be leaving the department would abstain from voting and not attend the meeting. Of the fourteen members who attended, eleven voted in favor of the application, one abstained because of a question about the criteria to be applied, and Hammond voted against. Hamblin did not vote at the meeting but told the others that as head of the department he would recommend in accordance with the vote that Petroni be promoted and granted tenure. Hamblin's memorandum to Bleibtreu, dated approximately one month after the meeting, in material part read as follows:

1. Although John P. Schaefer, president of the University of Arizona, was called by appellants as a witness and is referred to throughout their briefs as "Appellee Schaefer," he was not named as a defendant.

"This is to recommend the promotion of Frank A. Petroni to an associate professorship with tenure in the Department of Sociology. There was a meeting of the tenured faculty who had read Professor Petroni's work and who had looked over his teaching evaluations and read the letters of recommendation. After some discussion a vote was taken—11 for, 4 against and 2 abstentions. One of the abstentions was by Robert Nisbet who is leaving.

"Since the vote was not unanimous I am submitting herewith majority and minority reports for your consideration. Also enclosed please find Frank Petroni's vita and five letters of evaluation from outside referees, professors who are the leading people in Petroni's specialities.

"In instances such as these I would prefer to simply have my vote counted as a faculty member rather than a department head. Hence, it is included in the above ennumeration [sic]."

Hamblin testified that the four negative votes reported in his memorandum included, in addition to Hammond's, his own, which he did not cast at the meeting, and those of the two absent department members, from whom he received letters critical of Petroni's published work three days after the meeting. He testified that he felt those four votes comprised an "appreciably large" minority, requiring a minority report, and that the report accurately reflected the views of the four.

The trial court in directing a verdict on the first count relied on the reasoning of the U. S. Supreme Court in *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), adopted by Division One of this court in *Long v. Mertz*, 2 Ariz.App. 215, 407 P.2d 404 (1965), extending the defense of absolute privilege to a claim for defamation against a public officer for making a statement in the course of official duties which

he is directed or authorized specifically by law to do. Appellants, relying on the language in this court's opinion in *Martinez v. Cardwell*, 25 Ariz.App. 253, 542 P.2d 1133 (1975), argue that any privilege at best is qualified, and thus available only in the absence of "actual malice," defined as personal spite, hatred, or ill will. They contend there was substantial evidence from which the jury could have found such malice in Hamblin's handling of Petroni's application, together with their previous relationship, which included "strenuous disagreements" and "heated arguments" while both were members of the department's executive committee, from which Petroni had resigned more than a year prior to the recommendations on promotion and tenure.

Although the language in *Martinez* on which appellants rely is unequivocal, it was gratuitous, inasmuch as there was no evidence of actual malice in that case, and therefore dictum. In any event, a reconsideration of the question under the circumstances of the instant case has convinced us to abandon the position espoused in *Martinez*, and adopt the rule of *Long v. Mertz*, supra.[2]

Decisions on the granting of academic tenure necessarily have a long range effect on the character of the state's educational institutions. If the officials responsible for recommending whether a permanent position should be granted are exposed each time they make a negative evaluation to the possibility of a jury trial on their motives and the truthfulness of their statements or the accuracy of their opinions, the risk inherent in all but the most extreme cases would tend to deprive the governing body of the candor essential to an accurate appraisal of the applicant's qualifications. It is not for the protection of the public officer but for the protection of the public that absolute immunity is recognized in

---

2. As noted recently by Division One in *Grande v. State*, 115 Ariz.App. 394, 565 P.2d 900 (filed March 22, 1977), the issue may have been foreclosed to further evaluation on the Court of Appeals level by the Arizona Supreme Court in *White Mountain Apache Indian Tribe v.*

*Shelley*, 107 Ariz. 4, 480 P.2d 654 (1971), citing *Barr v. Matteo*, *supra*, as well as *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968), which in turn had expressly relied on *Long v. Mertz*, *supra*.

these circumstances. See *Hughes v. Bizzell*, 189 Okl. 472, 117 P.2d 763 (1941).

Further, we disagree that appellants introduced evidence from which the jury could have found that Hamblin acted out of personal spite, hatred, or ill will. Appellants' evidence, like the majority vote at the meeting on Petroni's application for promotion and tenure, might have led the jury to conclude that the statements in the report were falsely demeaning, hence legally defamatory, but even a qualified privilege would have required a directed verdict where the motivation for the statements was professional rather than personal animosity. Indeed, in introducing evidence of Hamblin's authoritarian handling of departmental affairs, appellants established that he treated other members exactly the same as Petroni. After Hamblin became head of the department in 1971 there were few promotions, and tenure was granted primarily to eminent sociologists recruited from the faculties of other universities. No evidence whatsoever was introduced as to the personal relationship of Petroni with any of the other individual appellees.

Appellants also argue that preparation of the minority report fell outside the course of Hamblin's official duties with respect to recommendations for promotion and tenure, and, therefore, that no privilege was applicable. They rely on university guidelines requiring "an explanation of the minority view if the minority vote was appreciably large," and contend that such a report was precluded where only one negative vote was cast at the meeting. The same guidelines, however, provide further that the department head "should also submit a clear statement of his own recommendation, as distinct from the recommendation of his advisory committee." The fact that Hamblin's statement was submitted in the guise of a minority report, even if he was incorrect in counting his vote and the critical comments of the absent department members as part of an "appreciably large" minority vote, would not remove it from the category of a statement made in the course of official duties which he was directed or authorized specifically to make as a part of those duties.

## DEPRIVATION OF CIVIL RIGHTS

 Appellants' argument that they were entitled to damages for deprivation of Petroni's rights, privileges and immunities guaranteed under the Constitution presupposes a property interest in his continued employment, or invasion of a liberty interest by imposing on him a stigma limiting his freedom to obtain other employment. Petroni's expectation that he would be given tenure did not amount to a property interest in continued employment protected by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The opinion of the United States Supreme Court in *Roth* also seems dispositive of the claim that failure to renew Petroni's employment infringed on the liberty guaranteed by the Fourteenth Amendment:

"There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' (Citations omitted) In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or

other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this again, would be a different case . . . In the present case, however, this principle does not come into play."

408 U.S. 573–74, 92 S.Ct. 2707.

See also *Jablon v. Trustees of California State Colleges*, 482 F.2d 997 (9th Cir. 1973); *Weathers v. West Yuma County School Dist. R–J–1*, 530 F.2d 1335 (10th Cir. 1976); *Blair v. Board of Regents of State Univ. & Com. Col. Sys.*, Tenn., 496 F.2d 322 (6th Cir. 1974); *LaBorde v. Franklin Parish School Board*, 510 F.2d 590 (5th Cir. 1975); *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803 (9th Cir. 1975); *Shirck v. Thomas*, 486 F.2d 691 (7th Cir. 1973); *Perkins v. Regents of University of California*, 353 F.Supp. 618 (C.D.Cal.1973).

## TORTIOUS INTERFERENCE WITH EMPLOYMENT

■ In their claim for damages for tortious interference with Petroni's employment, appellants also alleged actual malice on the part of appellees. In a similar case, *Perry v. Apache Junction Elementary School District, # 43*, 20 Ariz.App. 561, 514 P.2d 514 (1973), a discharged school principal charged that members of the school board and superintendent had conspired to bring about the wrongful termination of her employment. Affirming dismissal of the claim on motion for summary judgment, this court said:

"We must now consider the conspiracy to procure appellant's breach of contract. A school board member is an agent of the school board, *Webster v. Heywood*, 21 Ariz. 550, 192 P. 1069 (1920), and the superintendent is obviously an employee of the board. It has been held that agents and employees of a corporation cannot conspire with their corporate principal or employer when acting in their official capacities on behalf of the corporation and not as individuals for their individual advantage. *Wise v. Southern Pacific Company*, 223 Cal.App.2d 50, 35 Cal.Rptr. 652 (1963).

"We think the rule expressed by the California court is applicable here. Being in a confidential relationship with the board the actions of the members and the superintendent were privileged. *Wise v. Southern Pacific Company*, supra. We can find no facts alleged indicating that appellees were acting for their individual advantage."

20 Ariz.App. at 564, 514 P.2d at 517.

Appellants concede that the rule in *Perry* would inure to the benefit of appellees Bleibtreu and Weaver, but argue that a jury question existed as to whether Hammond and Hamblin were acting pursuant to their official duties in connection with the minority report. There was no evidence of any individual advantage to Hammond in expressing the negative opinions incorporated in the report, nor, as indicated in our previous discussion of the claim for defamation, any evidence that Hamblin was acting outside the course of his official duties. Thus, the privilege enunciated in *Perry* extended to them as well.

## REINSTATEMENT

■ For the reasons set forth in our discussion of appellants' claim for damages for deprivation of Petroni's civil rights, he was not entitled to reinstatement to his position of employment. Appellees perfected a cross appeal from the order that Petroni be granted a due process hearing in accordance with the university's rules and regulations, but the record reveals that such hearing already has been held and the question thus has become moot.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.