836 P.2d 445

**STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Robert L. Gottsfield, a judge thereof, Respondent Judge,**

**Ann Roper, Real Party in Interest.**

No. 1 CA–SA 92–0004.

Court of Appeals of Arizona, Division 1, Department A.

May 18, 1992.

Review Denied Sept. 22, 1992.

Richard M. Romley, Maricopa County Atty. by Gerald R. Grant, Deputy County Atty., Phoenix, for petitioner State of Ariz.

Dean W. Trebesch, Maricopa County Public Defender by Curtis F. Beckman, Deputy Public Defender, Phoenix, for real party in interest.

## OPINION

GRANT, Presiding Judge.

The state petitioned for special action in this case, asking for relief from an order of the trial court in Maricopa County Superior Court Cause No. CR 91–03494. In the trial court the defendant is Ann Roper, the real party in interest in this special action. She is charged with aggravated assault, a class 3 felony. The state alleges that she used a knife to cause physical injury to her husband. The defendant filed a motion asking the trial judge to compel the victim/husband to make available to the defense for copying "all of his past and present medical records from any institution in any jurisdiction." According to the defense motion, the victim has received psychiatric treatment over the years for a multiple personality disorder. The motion alleged that, at the time of the assault, the victim "was manifesting one of his violent personalities" and that the defendant had acted in self-defense.

The trial court granted the defense motion to require disclosure of all the victim's medical records. The court said:

The Court determines that the defense has shown by credible psychiatric evidence that the victim's mental illness (multiples) could have adversely affected his ability to perceive, recall, or accurately relate what occurred on the day in question so that the examination of such documents is important for both the experts for the State as well as the defense. The second ground used by the

Court to grant this motion is there has been a waiver of the physician/patient privilege by [victim] with respect to Mrs. Roper at least in connection with all sessions at which she was present with [victim] and Dr. Gould. Under the circumstances, the Arizona Constitution (i.e. Victim's Bill of Rights) does not prohibit the disclosure of *all* the medical records of [victim] herein.

\* \* \* \* \* \*

Accordingly and in connection with the medical records disclosure,

IT IS ORDERED that all such records be forwarded to the Court for the Court to hold an in camera inspection for the reasons as set forth in argument this date.

On reflection since the Court has found a need for an in camera examination of [victim's] medical records solely on the *issue of multiple personalities,*

IT IS ORDERED denying request of defense that the Court also examine such records for disclosure of as yet undefined other issues.

IT IS FURTHER ORDERED denying request of defense that the Court find a general waiver of [victim's] privilege with respect to his medical records on all issues. [Emphasis in original.]

Thereafter the court issued a second minute entry:

IT IS FURTHER ORDERED that the alleged victim supply a list of the physicians who he has seen with respect to the multiple personality issue, as stated on the record.

The state seeks relief by special action from these orders of the trial court. We accept review. "When a trial court orders disclosure that a party or witness believes to be protected by a privilege, appeal provides no rememdy. Special action is the proper means to seek relief." *Church of Jesus Christ of Latter–Day Saints v. Superior Court,* 159 Ariz. 24, 25–26, 764 P.2d 759, 780–781 (App.1988).

After hearing oral argument, we entered an order on January 28, 1992, granting partial relief. We remanded the case to the trial court for an *in camera* inspection of the victim's medical records in accordance with the trial court's order. We further directed the trial court to make findings as follows:

1. which portions of the medical records, if any are essential to the presentation of the defense of self-defense;

2. which portions of the medical records, if any, are essential to the determination of the ability of the victim to perceive, recall, and/or accurately relate the events of the day in question.

We further ordered that only those portions of the medical records that the trial court determines are essential under the findings of 1 and 2 above are to be made available to the defense. We explain our order in this opinion.

The state's position is that article 2, section 2.1(A) of the Arizona Constitution ("the Victim's Bill of Rights") precludes the trial court from compelling disclosure of the victim's medical records. The state also argues that the records are protected from disclosure by the physician/patient privilege as set forth in Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–4062(4).

We discuss the application of the Victim's Bill of Rights first. Prior to this constitutional amendment, Arizona had open discovery in criminal cases as manifested by Rule 15, Arizona Rules of Criminal Procedure. Under Rule 15.1(a)(7), the state was required to provide the defendant with all materials or information which tended to mitigate or negate the defendant's guilt or which tended to reduce his punishment therefor. A defendant's right to discovery has been restricted by the adoption of the Victim's Bill of Rights so that the Arizona Constitution now provides in part:

To preserve and protect victims' rights to justice and due process, a victim of crime has a right:

. . . . .

5. To refuse an interview, deposition, or other discovery request by the defen-

dant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. II, § 2.1(A).

This court has recognized that this amendment precludes a trial court from ordering the deposition of a victim who has refused a defense request for a pretrial interview. *Day v. Superior Court,* 170 Ariz. 215, 823 P.2d 82 (App.1991).

■ The federal constitution gives the defense no greater right to discovery than exists under state law. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). However, concomitant with the Arizona Victim's Bill of Rights, the defendant has a due process right, under the federal and Arizona constitutions, to present a defense. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The defendant also has a concomitant right to effective cross-examination of a witness at trial. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ Due process rights are guaranteed in the Arizona Constitution at art. 2, section 4: "No person shall be deprived of life, liberty, or property without due process of law." This guarantee is congruent with the U.S. Constitution, amendments 5 and 14. *State v. Herrera–Rodriguez,* 164 Ariz. 49, 52, 790 P.2d 747, 750 (App.1989). We therefore have no problem reconciling state due process rights with federal due process rights. However, we must also reconcile and balance the state due process guarantee with the Victim's Bill of Rights. As both are constitutional rights, this is a difficult task. *See State ex rel. Dean v. City of Tucson,* Ariz., (2 CA–CV 91–0161 filed April 30, 1992). Due process of law is the primary and indispensable foundation of individual freedom in our legal system. *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Our supreme court has also held that denial of due process is a denial of fundamental fairness, shocking to a universal sense of justice.

*Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984). *See Kinsella v. U.S. ex rel. Singleton,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960); *Crouch v. Justice of Peace Court of Sixth Precinct,* 7 Ariz.App. 460, 466, 440 P.2d 1000, 1006 (1968). Our supreme court has also held that, if a trial court excludes essential evidence, thereby precluding a defendant from presenting a theory of defense, the trial court's decision results in a denial of the defendant's right to due process that is not harmless. *Oshrin,* 142 Ariz. at 111, 688 P.2d at 1003. We therefore hold that when the defendant's constitutional right to due process conflicts with the Victim's Bill of Rights in a direct manner, such as the facts of this case present, then due process is the superior right. This is so because due process is the foundation of our system of laws, having been first provided to the people in the Magna Carta and given to us by our founders in the United States Constitution. When there is a conflict, the due process clause of the U.S. Constitution prevails over a provision of a state constitution by virtue of the Supremacy Clause, which states:

> This Constitution and the Laws of the United States which shall be made ... under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

United States Const. art. VI.

Division 2 of this court has held that the discovery rules, Rules 15 and 17, have been abrogated by the Victim's Bill of Rights constitutional amendment with respect to victim interviews. *State v. Warner,* 168 Ariz. 261, 812 P.2d 1079 (App.1990); *see State v. O'Neil,* 172 Ariz. 180, 836 P.2d 393 (App.1991). The *Warner* court also held that defendants have neither a federal constitutional right to discovery, citing *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), nor any such right under the Arizona Constitution. The *Warner* court also stated:

Because the Arizona criminal discovery rules were unique in the United States the effect of the 1990 amendment is to place these defendants in the same position as every other criminal defendant both here and in other jurisdictions.

We fail to see how this deprives the real parties in interest of due process or the right to fundamentally fair proceedings against them.

168 Ariz. at 265, 812 P.2d at 1083.

The holding of *Warner* and *O'Neil* is that the Victim's Bill of Rights abrogates the rules of discovery only with respect to victim interviews; the remainder of the court's statements are *dicta. See Ritchie,* 480 U.S. at 55–58, 107 S.Ct. at 1000–1002 (criminal defendant has right to pretrial discovery pursuant to compulsory process clause of Sixth Amendment). We decline to follow the dicta in *Warner* or *O'Neil. See Martinez v. Cardwell,* 25 Ariz.App. 253, 256, 542 P.2d 1133, 1136 (1975) (one division of Court of Appeals not bound by decision of other division).

Therefore, we must first decide whether the production of the medical records ordered by the trial court violates the Victim's Bill of Rights; if the answer is "yes," we must decide whether there is a superseding federal constitutional right to due process and a fair trial that would mandate upholding the trial court's discovery order *under the facts of this case.* To better put this matter in context, we set forth the facts as stated by the defendant, who is the moving party in requesting the discovery.

### FACTS

The defendant alleges that the stabbing of her husband was not an unjustifiable attack but an act of self-defense. The defendant claims that she has been the victim of horrendous emotional and physical abuse by her husband during their marriage; that the victim is a mental patient with a multiple personality disorder who, on the date of the alleged aggravated assault, was manifesting one of his violent personalities, a personality who was resisting "integration" during treatment by his psychiatrist and by a Christian pastor. The defendant, not the victim, made the "911" call to the police at the time of the alleged incident, asking for help, at 3:34 a.m. on April 29, 1991. She requested help, according to the transcript of the call, because her husband was beating her and threatening her with a knife. When the police arrived at the home, they found the husband (victim) bleeding from a stomach wound allegedly inflicted by the wife (defendant) with a knife. A police report reveals that the victim has been arrested three times for assaulting the defendant and was convicted in Florida in 1989 for assaulting the defendant.

The defense alleges that the victim is a violent and psychotic individual who has been treated for multiple personality disorder for at least 12 years in most local hospitals and by a number of local psychiatrists and psychologists.

### DOES THE TRIAL COURT'S DISCOVERY ORDER VIOLATE THE VICTIM'S BILL OF RIGHTS?

The Arizona Constitution provides:

To preserve and protect victims' rights to justice and due process, a victim of crime has a right:

. . . . .

5. To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. II, § 2.1(A).

■ We are unable to find a case, nor has either party cited one, that interprets the phrase "other discovery request." Given the plain meaning of the words, we hold that the victim's medical records come within the phrase "other discovery request."

■ For the first time in American jurisprudence, victims have standing in criminal cases. Thus, courts are now faced with extremely difficult questions arising from the inevitable tension between the rights of the accused, who is presumed to be innocent, and the rights of the victim. Many of

these rights are harmonious; but in this case, the defendant contends that her rights conflict with those of the victim. She argues that in this confrontation the victim's right of nondisclosure must yield because the defendant has made a sufficient showing of the need (both essential and material) for the records. However, we hold that under the Victim's Bill of Rights, the victim may assert the right and refuse to make available to the defense a victim's medical records.

Having found that the victim can refuse the request under the Victim's Bill of Rights, we need not reach the question of the physician/patient privilege in this context.

## IS THERE A FEDERAL AND ARIZONA DUE PROCESS AND FUNDAMENTAL FAIRNESS RIGHT WHICH SUPERSEDES THE VICTIM'S BILL OF RIGHTS AND SUPPORTS THE DISCOVERY REQUEST UNDER THESE FACTS?

■ We must now determine whether, under these facts, the victim's refusal of the defendant's discovery request violates the defendant's right to due process under the Arizona and United States Constitutions. Before the Victim's Bill of Rights, a defendant's due process rights were generally recognized to be violated if the victim possessed exculpatory information that was not disclosed to the defendant. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *McDowell v. Dixon*, 858 F.2d 945 (4th Cir.1988). State courts are generally free to limit the nature and extent of discovery permitted in criminal cases. *Weatherford v. Bursey*, 429 U.S. at 559, 97 S.Ct. at 845. However, limitation of discovery is subject to the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which established that the due process clauses of the Fifth and Fourteenth Amendments give a defendant the right of access to any evidence favorable to the defense and material to either guilt or punishment. In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court held that evidence is material if there is a reasonable probability that its disclosure would have altered the result at trial. Thus *Brady* places some restrictions on a state's power to limit defense discovery. Any procedure which does so must establish alternative procedures to ensure that evidence is not suppressed that the state is constitutionally required to disclose.

In the present case, defendant argues that disclosure of the victim's medical records will not only be exculpatory insofar as it establishes a justification defense, but also essential to effective impeachment of the victim, should he testify.

■ With regard to the justification defense, self-defense is a statutory affirmative defense in Arizona. A.R.S. § 13–404. The statute provides that a person is justified in using physical force against another when and to the extent that a reasonable person would believe that physical force is immediately necessary to protect oneself against the other's use, or attempted use, of unlawful physical force. "Criminal defendants carry the initial burden of raising self-defense in the minds of the jury as a justification for otherwise unlawful acts." *State v. Duarte*, 165 Ariz. 230, 231, 798 P.2d 368, 369 (1990). The state becomes obligated to prove beyond a reasonable doubt that the defendant did not act in self-defense when there is any evidence of self-defense. *Id.* Here, we have sufficient evidence presented by the defendant to raise self-defense and put the burden of proof on the state to overcome the defense. This evidence includes the undisputed allegation by the defendant that the victim had prior arrests and one prior conviction for domestic violence toward the defendant, the undisputed allegation that the victim suffers from a mental illness that predisposes him to violent behavior, and the transcript of the "911" call to police by the defendant asking for help because her husband was beating her and threatening her with a knife.

With regard to impeachment evidence, as contrasted with exculpatory evidence, the *Bagley* court recognized the difference be-

tween the need for evidence for the two different purposes, but refused to draw a distinction for the purposes of *Brady*-mandated disclosure: "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is 'evidence favorable to an accused' so that, if disclosed and used effectively, *it may make the difference between conviction and acquittal." Bagley*, 473 U.S. at 676, 105 S.Ct. at 33 (emphasis added and citations omitted); *see also Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("nondisclosure of evidence affecting credibility falls within this general [*Brady*] rule.").

■ *Brady* emphasizes suppression of evidence *by the prosecution*, but does not require the victim to cooperate with the defense. However, the Victim's Bill of Rights does not give victims a right to prevent the prosecution from complying with requests for information within the *prosecutor's* possession and control. *See State v. Piper*, 113 Ariz. 390, 555 P.2d 636 (1976) (establishing a distinction between the prosecutor and the victim). *See also* Thomas B. Dixon, *Arizona Criminal Procedure After The Victim's Bill of Rights Amendment: Implications of a Victim's Absolute Right to Refuse a Defendant's Discovery Request*, 23 Ariz.St.L.J. 831, 840–849 (1991).

■ In the present case, we are discussing tangible records that are within the control of the victim, even if not in his physical possession, because they are protected by the physician/patient privilege. A.R.S. section 13–4062(4) provides in part:

A person shall not be examined as a witness in the following cases:

．　　．　　　．　　　．　　　．

4. A physician or surgeon, without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

*See also* A.R.S. § 32–2085 (psychologist/client privilege). These statutory privileges have been considered waived only when the patient does so in writing or by in-court testimony, or when the patient pursues a course of conduct inconsistent with observance of the privilege. *Bain v. Superior Court*, 148 Ariz. 331, 714 P.2d 824 (1986).

We do not know in this case whether the victim has waived this privilege by giving his medical records to the prosecutor, in which case they are now under the prosecutor's control and obviously subject to the *Brady* considerations discussed earlier. This is a finding that the trial judge must make preliminarily to the other findings in our original order but implied therein. If the trial court determines that the prosecution has the medical records of the victim, then the trial judge must proceed to make the other two findings which we previously directed.

These findings are:

1. Which portions of the medical records, if any, are essential to the presentation of the defense of self-defense.

2. Which portions of the medical records, if any, are essential to the determination of the ability of the victim to perceive, recall, and/or accurately relate the events of the day in question.

■ If the medical records have *not* been made available to the prosecution (or any agent of the state such as law enforcement officers), then the victim has the right to refuse defendant's discovery request under the Victim's Bill of Rights. However, if the trial court determines that *Brady* and due process guarantees require disclosure of exculpatory evidence and, further, if the court determines that the medical records *are* exculpatory and are essential to presentation of the defendant's theory of the case, or necessary for impeachment of the victim relevant to the defense theory, then the defendant's due process right to a fundamentally fair trial and to present the defense of self-defense overcomes the statutory physician patient privilege on the facts as presented here, just as the due process right overcomes the Victim's Bill of Rights on these facts. *See Hospital Corp. of America v. Superior Court*, 157 Ariz. 210, 755 P.2d 1198 (App.1988).

■ The defendant also argued to the trial court, in her motion to compel, and to this court in response to the special action, that nondisclosure of the medical records violates her Sixth Amendment right to confront witnesses.

■ In *Pennsylvania v. Ritchie,* a plurality of the Supreme Court held that confrontation clause rights are *trial* rights that do not afford criminal defendants a right to pretrial discovery. 480 U.S. at 53, 107 S.Ct. at 999. For purposes of the present case, we agree. Although we anticipate that the issue of the victim's right to withhold his medical records will arise *during* trial if not resolved by the trial court's pretrial *in camera* inspection of records and ruling based on this opinion, we decline to reach that issue in this special action as it would be premature to do so.

However, insofar as the need for the medical records at the pretrial stage is necessary in this case in order that the defendant's expert may review them to prepare for impeachment of the victim at trial, we underline that the right to confront witnesses means more than simply being able to physically confront witnesses in the courtroom; confrontation also includes as its "main and essential purpose" the ability to *effectively* cross-examine witnesses. *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (quoting *Davis,* 415 U.S. at 315, 94 S.Ct. at 1109). The right to cross-examine witnesses is essential to our basic notions of due process and fair trial. *Chambers,* 410 U.S. 284, 93 S.Ct. 1038.

The Supreme Court has held that state laws providing for nondisclosure of information to criminal defendants must, in some situations, yield to the constitutional confrontation rights of the accused. *See, e.g., Michigan v. Lucas,* 500 U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (state rape shield law; Court remanded for determination of confrontation clause violation); *Davis,* 415 U.S. 308, 94 S.Ct. 1105 (statute requiring confidentiality of juvenile records must yield to cross-examination rights); *see also Ritchie,* 480 U.S. 39, 107 S.Ct. 989 (compulsory process and due process required disclosure of otherwise confidential records of child protective service).

Of course, "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. Such limitations are in perfect harmony with the protections accorded to victims through the Victim's Bill of Rights. However, such restrictions "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987).

■ Thus any restrictions on defendant's access to information essential to preparation for effective, reasonable cross-examination or impeachment of the victim in this case imposed pursuant to the Victim's Bill of Rights must be proportionate to the interest of protecting the victim as balanced against the defendant's due process right to a fundamentally fair trial. A defendant must be afforded an opportunity to effectively cross-examine or impeach the victim, and she must be allowed to cross-examine even on matters that may be potentially revealing, embarrassing or prejudicial to the victim. The *in camera* inspection of the medical records already ordered in this case, will prepare the trial court to timely assess the necessity of the medical records for cross-examination purposes, weighing the appropriate factors. *See Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438; *Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988). If the defendant's need to effectively cross-examine and impeach the victim in order to establish a justification defense requires access to the medical records before trial in order for her expert witness to review these records in order to testify regarding the justification defense of self-defense, then the Victim's Bill of Rights must yield to the federal and state constitutions' mandates of due process of

law so that the defendant is able to present her theory of self-defense, which she has adequately raised on the facts presented here. *See Hospital Corp. of America*, 157 Ariz. at 214, 755 P.2d at 1202.

## CONCLUSION

The Victim's Bill of Rights was appropriately amended to the Arizona Constitution as a shield for victims of crimes. *See Slayton v. Shumway*, 166 Ariz. 87, 800 P.2d 590 (1990). However, the amendment should not be a sword in the hands of victims to thwart a defendant's ability to effectively present a legitimate defense. Nor should the amendment be a fortress behind which prosecutors may isolate themselves from their constitutional duty to afford a criminal defendant a fair trial.

We therefore remand this case to the trial court for further proceedings consistent with this opinion.

TOCI, J., concurs.

LANKFORD, Judge, concurring.

I write separately to clarify my reasons for joining the majority.

In my view, the essence of the court's holding is that fundamental fairness may require that a defendant have access to information within the control of a victim prior to trial. The defendant has a basic, overriding right to present an effective defense. If the trial judge determines that pretrial access to information is essential for an effective defense, then the right to due process of law under the federal constitution preempts the victim's rights under the state constitution.

This holding is not premised upon a recognition of a general constitutional right to pretrial discovery. Nor does the holding in this case legitimize a claim to such a general right. Rather, it rests on the fact that fulfillment of defendant's trial rights may, in narrow circumstances, rest upon pretrial procedures.

Nor in my view is the relief we have granted founded directly upon *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Although *Brady* involved an application of the due process clause to ensure a defendant's access to exculpatory materials, the court's holding was limited to materials within the control of the prosecutor. The court's reasoning was that the state's conduct in obtaining a criminal conviction through suppression of the truth intolerably thwarts the accomplishment of justice, the ultimate goal of every criminal trial. If the information sought in the case at hand is not within the prosecutor's control, *Brady* does not apply.

Instead, we recognize that in some cases exculpatory information may be of little or no value unless the defendant has access to it prior to trial. This may be so when information must be considered by experts in preparing for their trial testimony, for example. When the information is both essential to the defense and requires pretrial disclosure to have value to the defense, then due process requires that defendant be allowed to obtain it.

I therefore concur in the majority's opinion.