NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. WILLIAM G. MONTGOMERY, MARICOPA
COUNTY ATTORNEY, *Petitioner*,

*v.*

THE HONORABLE JOSE S. PADILLA, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

TIMOTHY LEE RAY, *Real Party in Interest*.

No. 1 CA-SA 14-0174

FILED 11-25-2014

Petition for Special Action from the Superior Court in Maricopa County
No. CR2013-001551-001
The Honorable Jose S. Padilla, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By E. Catherine Leisch
*Counsel for Petitioner*

Law Office of Carrie M. Spiller, PLLC, Phoenix
By Carrie M. Spiller
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Donn Kessler joined.

---

**C A T T A N I**, Judge:

¶1        The State seeks special action review of the superior court's pretrial ruling that the State must provide Defendant Timothy Ray's counsel with a copy of assault victim M.C.'s sealed Rule 11[1] records from an unrelated case, and that M.C. must produce other medical records relating to his mental health as a condition to testifying regarding the facts of the crime in the instant case.  For reasons that follow, we accept special action jurisdiction and grant relief by vacating the superior court's ruling.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Ray is pending trial on three counts of assault arising from an incident in May 2012, during which he allegedly used a box cutter in attacking M.C. and another man.  The State has indicated its intent to call M.C. as a witness during its case in chief to testify about the incident.

¶3        On May 19, 2014, M.C. was ordered to submit to a Rule 11 evaluation in an unrelated criminal proceeding in which he was charged with assault based on an incident that occurred in September 2012.  On July 9, 2014, after learning of the Rule 11 evaluation, Ray's counsel filed a motion to dismiss the instant case, alleging that the State had violated *Brady v. Maryland*[2] by withholding disclosure material, including information relating to M.C.'s then-pending Rule 11 proceeding.

¶4        The State responded that it was not aware of M.C.'s pending Rule 11 proceeding until after Ray filed the motion to dismiss.[3]  The State

---

[1]        Ariz. R. Crim. P. 11.
[2]        373 U.S. 83 (1963).
[3]        The State noted that the prosecutor learned on July 6, 2014 that M.C. had "regularly scheduled appointments [twice weekly] with a doctor pertaining to anger management."  The prosecutor apparently advised the court and defense counsel of this and other information in an unrecorded discussion on August 5, 2014, the day set for trial.

further noted that the Rule 11 proceeding was not relevant in the instant case because victims are presumed competent to testify. The State also noted that M.C. would be subject to cross-examination, which would allow Ray's counsel to question him regarding competence, and that the court could determine at that point whether M.C.'s alleged competency issues were relevant to his ability to testify competently in the instant case.

¶5　　　　After taking the matter under advisement, the superior court denied the motion to dismiss. The court concluded that "[M.C.]'s Rule 11 competency evaluation [was] not sufficient to warrant preclusion from testifying . . . [and] the State was not compelled to disclose [M.C.]'s Rule 11 status in another unrelated matter."

¶6　　　　The case was subsequently assigned to a different judge for trial, and when the parties met in chambers to discuss the case the morning of trial, defense counsel requested M.C.'s mental health records. The State indicated that M.C. had previously been diagnosed with schizoaffective disorder, and that he was subject to involuntary commitment proceedings in superior court. The court revisited the prior judge's ruling regarding M.C.'s Rule 11 report and continued the trial to permit an in camera review of records relating to M.C.'s medical and psychological history. The State then provided to the court a copy of the Rule 11 report from M.C.'s case.

¶7　　　　Two days later, the State filed a memorandum regarding M.C.'s mental health issues, arguing that the use of an expert's confidential report in an unrelated case for purposes of impeachment is prohibited under Rule 11.8. Conversely, Ray asserted that he was entitled to the expert's report to overcome the presumption that M.C. was competent to testify as a witness.

¶8　　　　Although acknowledging M.C.'s competence to testify, the superior court set parameters on M.C.'s testimony. Specifically, the court stated: "[M.C.] can testify to anything that happened after the event, but if he is going to be pointing fingers as to who caused the event, then his mental state becomes very relevant." Citing *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 836 P.2d 445 (App. 1992), the court concluded that M.C.'s privacy interest in keeping his Rule 11 documents confidential was secondary to Ray's right to cross-examine and impeach him at trial. The court thus ruled that if M.C. were to testify that Ray was the person who attacked him, defense counsel would be permitted "to question his ability to recollect and accurately relate that information, which would bring in his mental state, and at that point in time all his medical records [would] come in."

¶9          When the parties appeared for trial on August 11, 2014, the
State requested clarification of the court's ruling regarding M.C.'s
testimony.  The court then stated:

> [T]he relevant inquiry as far as [M.C.]'s state of mind . . . is at
> the point of incident . . . . [I]f he does testify in substance that
> he is aware of what happened shortly before, during or after
> the alleged attack in this case, [] the Court would order that
> he disclose his previous medical records dealing with mental
> state whether involved in the Rule 11 process or not.  Basically
> that will be all relevant to his ability to accurately reflect upon
> and accurately relate information to the jury.   If he is
> unwilling or will not provide those records . . . the Court
> would be inclined to strike his testimony.

¶10          After noting its intent to question M.C. regarding all aspects
of the incident, the State requested a stay to file a special action petition with
this court to challenge the superior court's ruling.

¶11          The following day, M.C. was found to be competent and able
to assist in his own defense in his separate criminal matter.  The Rule 11
court ordered that M.C.'s mental health records be sealed and opened only
by court order.  M.C. subsequently pleaded guilty to misdemeanor assault.

## DISCUSSION

¶12          Recognizing that the State lacks an adequate remedy by
appeal, *see* Ariz. R.P. Spec. Act. 1(a), we initially accepted jurisdiction by
order dated September 11, 2014.   Respondent Judge dismissed the
indictment that same date on the basis that Ray's speedy trial deadline had
passed, but on September 17, 2014, we vacated the dismissal. The dismissal
was erroneous because the delay beyond the August 5, 2014 trial date
resulted from Ray's motion to compel disclosure of the victim's medical
records, which suspended the running of speedy trial deadlines pending
resolution of the motion and a rescheduled trial date. *See State v. Burrus*,
134 Ariz. 251, 253, 655 P.2d 371, 373 (App. 1982) (delay resulting from
defendant's motion, causing trial to be rescheduled at a later date, is
excluded from calculation of speedy trial time, as delay "occasioned by or
on behalf of the defendant").   We therefore affirm our order vacating
dismissal.

## I.   Victim's Competence to Testify.

¶13     The State argues that the superior court improperly found that the victim is incompetent to testify without inquiring into the victim's ability to perceive, remember, and relate the facts of the crime against him. We agree that a court must make more of a record than has been made in this case before determining that a victim is incompetent to testify. *See State v. Schossow*, 145 Ariz. 504, 507–08, 703 P.2d 448, 451–52 (1985). But here, the court made no generalized competency finding and instead conditioned any testimony from the victim that goes beyond what "happened as a result of the incident" on disclosure of the victim's sealed Rule 11 records and other mental health records. Thus, the superior court has not ruled that M.C. is incompetent to testify.

## II.   Order that the State Disclose the Victim's Rule 11 Records.

¶14     In making the victim's testimony contingent on the disclosure of mental health records, the superior court stated that "if the State refuses to release the mental health records of the victim/witness, the Court will preclude his testimony." But because Rule 11 documents are sealed, they are not in "the *prosecutor's* possession [or] control." *Roper*, 172 Ariz. at 239, 836 P.2d at 452. The prosecutor thus does not have discretion to disclose these documents. *Cf. State v. Kevil*, 111 Ariz. 240, 243, 527 P.2d 285, 288 (1974) (finding that trial court did not abuse its discretion by denying motion to disclose victim's psychiatric records because the victim "did not become an agent of the prosecutor's office [and thus subject to the State's disclosure obligations] by his cooperation"). And the record does not show the State has possession of any of M.C.'s other mental health records. Accordingly, because the State does not control the records at issue, the superior court erred by ruling that the victim would be precluded from testifying "*if the State refuses to release* the mental health records of the victim/witness." (Emphasis added.)

## III.   Defendant's Right to Review the Victim's Mental Health Records.

¶15     Under *Roper*, if a trial court determines that a victim's medical records are essential for impeachment of the victim relevant to the defense theory, "the defendant's due process right to a fundamentally fair trial . . . overcomes the statutory physician patient privilege . . . [and] the Victim's Bill of Rights," and the defense is entitled to the relevant records. 172 Ariz. at 239, 836 P.2d at 452. But *Roper* addressed only victim's records that were already in the prosecution's possession. The *Roper* majority did not address the authority of a court to order a victim or a victim's doctors to produce

his or her medical records (as opposed to ordering the State to produce those records in its possession) when the defendant has not availed himself of compulsory process by subpoena to obtain the records from the person or entity possessing them. Citing *United States v. Agurs*, 427 U.S. 97 (1976), and *McDowell v. Dixon*, 858 F.2d 945 (4th Cir. 1988), the *Roper* majority stated its view that "[b]efore the Victim's Bill of Rights, a defendant's due process rights were generally recognized to be violated if the victim possessed exculpatory information that was not disclosed to the defendant." 172 Ariz. at 238, 836 P.2d at 451. But both *Agurs* and *McDowell* also involved information known to the government, which thus implicated the due process protections of *Brady*. *See Agurs*, 427 U.S. at 106–07; *McDowell*, 858 F.2d at 946. The concurrence in *Roper* asserted—without citation to authority—that a defendant's access to a victim's records is not dependent on *Brady* considerations. 172 Ariz. at 241, 836 P.2d at 454. We are unaware, however, of any controlling authority for the proposition that a court may order a non-party to produce confidential medical or mental health records that have not been sought by subpoena. Here, we note that Ray has not subpoenaed the victim's medical records from M.C. or M.C.'s physicians and, as we have described, there is no indication that the State possesses these records.

¶16 The absence of a subpoena notwithstanding, the superior court erred in applying *Roper*, because under *Roper*, a court must specify "[w]hich portions of the medical records, if any, are essential to the determination of the ability of the victim to perceive, recall, and/or accurately relate the events of the day in question." *Id.* at 239, 836 P.2d at 452. Here, there is no indication that Ray sought by subpoena other mental health records or that records other than the Rule 11 report were provided to the court for in camera review. In any event, the superior court did not make the findings required under *Roper*, and the court's ruling must thus be set aside. Accordingly, we vacate the court's ordered disclosure of the victim's mental health records.[4]

---

[4] We note that the purpose of the Rule 11 proceeding—and, accordingly, the focus of the Rule 11 expert's report—was to determine M.C.'s competence as a defendant to assist in his own defense in the proceedings against him, not to determine his ability to testify as a witness about unrelated observations in the instant case. We also note that M.C.'s Rule 11 examination occurred more than two years after the crime at issue in this case, and that the Rule 11 proceeding resulted in a finding that M.C. was competent to stand trial in the proceeding against him. In this context,

## CONCLUSION

**¶17** For the foregoing reasons, we accept jurisdiction and grant relief by vacating the superior court's pretrial ruling conditioning the scope of M.C.'s testimony on disclosure of certain of his mental health records.



**Ruth A. Willingham · Clerk of the Court**
FILED : gsh

---

absent evidence and a finding that the Rule 11 report (or other records) call into question M.C.'s ability to perceive, recall, or accurately relate the events of the crime at issue in the instant case, these records are of dubious value in the instant case.