NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TODD ERVIN AHRENS, *Appellant*.

No. 1 CA-CR 24-0161

FILED 03-11-2025

Appeal from the Superior Court in Coconino County
No. CR 2020-00678
The Honorable Joshua Steinlage, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Coconino County Legal Defender's Office, Flagstaff
By Joseph Adam Carver
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

---

**P A T O N**, Judge:

¶1        Todd Ervin Ahrens appeals his conviction and sentence for transportation of a dangerous drug (methamphetamine) for sale.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the evidence in the light most favorable to upholding the jury's verdict.  *See State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

¶3        In May 2017, Cynthia Sosa was driving in Coconino County with Ahrens as her passenger when her car broke down.  She pulled over and Ahrens tried to repair the car.  Arizona Department of Public Safety ("DPS") Detective Nathan Solomon saw the car on the side of the road with its hood up and stopped to help.  Ahrens was working under the hood and when he saw Detective Solomon he appeared "startle[d]," his "eyes got wide, and then he dipped back behind the car out of sight."  Sosa was sitting in the driver's seat, "seemed anxious," "was trembling," and "breathing rapidly."

¶4        As they spoke, Detective Solomon smelled "a significant odor of marijuana" coming from inside the car and called for backup; possession of marijuana without a medical marijuana card was illegal at the time.

¶5        DPS Trooper Curtis Kuhn arrived and searched the car with Detective Solomon.  During the search of the car, Ahrens backed away and walked up an embankment, almost tripping over a log.  Detective Solomon later found a "tooter" or drug "dosing cup" in the area where Ahrens had been.  In the car, the officers discovered an unusable amount of marijuana residue in the ashtray.  They found two Tupperware-style containers containing two pounds of methamphetamine in Sosa's bag.  They also found drug paraphernalia associated with methamphetamine use among Ahrens' belongings.  The officers arrested Sosa and Ahrens and Sergeant Henry Thomason interviewed them.

¶6        Ahrens said that he traveled with Sosa from New Mexico to Arizona with the expectation that he "would drive if she got tired," but he did not end up driving because "she did all right." He initially denied that he and Sosa visited Phoenix on that trip, but later admitted that he and Sosa traveled to Phoenix where they met "some young girls" whom they followed to an apartment complex; Sosa got out of the car and stepped away with them before returning to the car. Ahrens said that he "didn't want to get up in their business," he "kinda" knew what was going on during that trip, but "just kinda stayed out of it," and did not "want to say things that might get her in trouble."

¶7        Ahrens also said he traveled with Sosa to Arizona two other times in recent years. Both trips involved Sosa meeting someone in Phoenix, and giving Ahrens a cut of the methamphetamine she "brings up" once they returned to New Mexico. He also admitted that he had seen methamphetamine in the Tupperware container on those trips and did not receive anything until they returned to New Mexico.

¶8        A grand jury indicted Sosa and Ahrens on one count of transportation of dangerous drugs for sale. Sosa pled guilty to attempted transportation and was sentenced to two years' imprisonment. Ahrens proceeded to trial.

¶9        Following the close of the State's evidence, which included testimony from Detective Solomon, Trooper Kuhns, and Sergeant Thomason, Ahrens moved for a Rule 20 judgment of acquittal and argued that there was no substantial evidence that he acted "other than as a mere presence on the trip." The court denied the motion, reasoning that substantial evidence supported the charge.

¶10        Ahrens called Sosa as a witness at his trial. Sosa testified that she and Ahrens drove from New Mexico to Phoenix to pick up a package of methamphetamine. She invited Ahrens on the trip for company, but Ahrens was not involved with arranging the trip or the methamphetamine pickup. Sosa testified that she told Ahrens that the purpose of the trip was to buy a permit for manzanita wood, which she bought in Payson. Although Sosa never expressly told Ahrens she was picking up methamphetamine in Phoenix, she testified that he knew what she was up to. The morning after their arrival in Arizona, Sosa and Ahrens drove to an apartment in Phoenix, where she picked up the methamphetamine. Sosa was driving them back to New Mexico when her car broke down.

¶11 A jury convicted Ahrens of transportation of dangerous drugs for sale. Ahrens filed a motion for a new trial, arguing, as relevant here, that the verdict was contrary to the weight of evidence. Although the superior court noted that Sosa was "clearly the more culpable party" and the "primary player in the illegal activity," it denied Ahrens' motion and found the evidence was "sufficient to find [Ahrens] guilty as [Sosa's] accomplice." The court sentenced Ahrens to a five-year mitigated flat time sentence and awarded him 29 days of presentence incarceration credit.

¶12 The superior court permitted Ahrens to file a delayed appeal. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶13 Ahrens contends that insufficient evidence supported his conviction for transportation of dangerous drugs for sale because the State did not establish that he intentionally acted as an accomplice. He also argues the superior court violated his right to present a complete defense by not granting Sosa immunity to testify about their prior trips to Arizona. He asks us to reverse his conviction or remand for a new trial.

## I. Sufficient evidence supported Ahrens' conviction.

¶14 Ahrens argues that because the State presented insufficient evidence to prove that he intentionally facilitated Sosa's crime, the superior court erred by not granting his Rule 20 motion and motion for new trial on that ground. The State responds that a jury could conclude from the evidence that Ahrens intentionally acted as Sosa's accomplice to transport dangerous drugs for sale.

¶15 We review the superior court's denial of a Rule 20 motion and whether sufficient evidence supports a conviction de novo and will affirm "unless no substantial evidence supports the conviction." *State v. Teagle*, 217 Ariz. 17, 27, ¶ 39 (App. 2007); *State v. West*, 226 Ariz. 559, 562, ¶¶ 15-16 (2011). Substantial evidence is that which "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Teagle*, 217 Ariz. at 27, ¶ 40 (citation omitted). The evidence may be direct or circumstantial. *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005).

¶16 A person is guilty of transportation of dangerous drugs for sale if he (1) knowingly transported dangerous drugs for sale, and (2) the substance was in fact a dangerous drug (*i.e.*, methamphetamine as

undisputed here).[1] A.R.S. §§ 13-3407(A)(7), -3401(6)(c)(xxxviii). As relevant here, a person can be guilty as an accomplice if, "with the intent to promote or facilitate the commission of an offense[,]" he "[a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense," or "[p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13-301(2)-(3).

¶17    To convict Ahrens of transportation of dangerous drugs for sale, either as a principal or an accomplice, the State was required to prove Ahrens had "actual physical possession or constructive possession with actual knowledge" that a dangerous drug was present. *See Teagle*, 217 Ariz. at 27, ¶ 41 (citation omitted); *State v. Rice*, 1 CA-CR 22-0498, 2023 WL 5621896, at *4, ¶¶ 22-23 (Ariz. App. Aug. 31, 2023) (mem. decision); *State v. Gonzalez*, 1 CA-CR 11-0494, 2012 WL 3129136, at *2, ¶ 8 (Ariz. App. Aug. 2, 2012) (mem. decision) (discussing accomplice liability under Section 13-3407(A)(7)). Possession can be actual or constructive. *State v. Barreras*, 112 Ariz. 421, 423 (1975). "Constructive possession can be established by showing that the accused exercised dominion and control over the drug itself, or the location in which the substance was found." *Teagle*, 217 Ariz. at 27, ¶ 41. A jury could therefore determine that Ahrens had constructive possession of the substance if the evidence showed that he could control the substance. *See State v. Nadler*, 129 Ariz. 19, 22 (App. 1981). The superior court correctly instructed the jury on the elements of transportation of dangerous drugs for sale and accomplice liability.

¶18    Although Sosa testified that she did not tell Ahrens what was inside the bag, and Ahrens did not see her carry the bag into the car, Ahrens had access to the bag's contents during the drive. Sosa also testified that Ahrens sampled the methamphetamine during the trip, and she gave him permission to access her bag, which was later found to contain two pounds of methamphetamine. A reasonable juror could therefore find that Ahrens had constructive possession over the methamphetamine.

¶19    In addition to proving Ahrens had constructive possession over the methamphetamine, the State must show Ahrens had knowledge of the methamphetamine's presence. *Teagle*, 217 Ariz. at 27, ¶ 41. Knowing participation can exist even if a defendant lacks actual knowledge that the methamphetamine exists but was "aware of the high probability" of that fact and "deliberately shut his eyes to avoid learning the truth." *State v.*

---

[1] The court accepted the parties' stipulation to admit DPS' scientific reports identifying the substances found in the car as methamphetamine into evidence.

*Haas*, 138 Ariz. 413, 420 (1983); *see State v. Fierro*, 220 Ariz. 337, 339, ¶¶ 5-9 (App. 2008) (adding that requisite knowledge can exist if a defendant acts with "a conscious purpose to avoid learning the true contents" of the vehicle).

**¶20**　　　　Here, Ahrens repeatedly told law enforcement and testified that he tried staying out of Sosa's business. That Ahrens "deliberately shut his eyes," however, does not refute his knowing participation. *Haas*, 138 Ariz. at 420. The evidence showed that Ahrens knew about Sosa's illegal activities. Sosa testified that she "imagine[d]" Ahrens knew the methamphetamine was in the car. Ahrens had purchased methamphetamine from Sosa before. He also received a "cut" of Sosa's supply, and admitted to seeing the end product in a Tupperware container when they returned to New Mexico after prior Phoenix trips. Ahrens knew Sosa needed to meet someone in Phoenix. He admits that Sosa "probably did" pick up methamphetamine the last time they visited Arizona. Although he denied receiving any money or drugs for the instant trip, Ahrens said that Sosa gave him money for the casino.

**¶21**　　　　On appeal, Ahrens admits it would be reasonable to infer that he knowingly facilitated Sosa's crime because he knew Sosa intended to pick up methamphetamine in Phoenix. He nonetheless contends that he merely had knowledge, not intent, and claims that his knowing facilitation of Sosa's activities does not provide a basis to infer he "intentionally facilitated her crime." The evidence, however, was sufficient for the jury to find that Ahrens intended to further Sosa's crime, and the jury could find the elements met through accomplice liability. Sosa asked Ahrens to join her on the trip to keep her company, which helped her accomplish the task of transporting methamphetamine. He said he would have helped Sosa drive if she got tired. A jury could find that this agreement, along with Ahrens' other actions, were that of an accomplice aiding, counseling, or attempting to aid Sosa or providing the means and opportunity for Sosa to commit the offense. *See* A.R.S. § 13-301(2).

**¶22**　　　　Sufficient evidence supported the jury's verdict.

**II.　　Ahrens failed to make a sufficient offer of proof and even if he had, he has not shown his defense was prejudiced when the superior court declined to grant Sosa immunity to testify.**

**¶23**　　　　Ahrens contends that the superior court's decision not to grant Sosa immunity to testify about her prior trips to Arizona prevented him from presenting a complete defense because he was unable to fully

confront the State's evidence that he previously traveled to Arizona with Sosa. The State responds that we cannot review the issue of Sosa's immunity because Ahrens failed to make a sufficient offer of proof about Sosa's proposed testimony and even if we can, Ahrens has failed to show error.

¶24          "An offer of proof is simply a detailed description of what the proposed evidence is." *State v. Bay*, 150 Ariz. 112, 115 (1986). Ordinarily, we cannot review the superior court's ruling excluding testimony without "an offer of proof showing that the excluded evidence would be admissible and relevant." *Id.* Ahrens did not make a sufficient offer of proof during trial. His only request was to have the "full, unbridled ability to cross-examine" Sosa about prior trips to Arizona because the court admitted his own statements about the prior trips, stating that "we want to be able to cross and eliminate it and eliminate the speculation that the jury might have, and we think that we're being bound inappropriately if we can't get there." On appeal, Ahrens speculates that Sosa's testimony would have "concerned [his] knowledge and actions on those prior trips," and Sosa "could have . . . corroborated [his] statements about the trip." But Ahrens fails to demonstrate how Sosa's testimony would have impacted the outcome of his case, so "we cannot know what the proffered testimony would have shown." *State v. Hill*, 174 Ariz. 313, 329 (1993).

¶25          And even if Ahrens made a sufficient offer of proof at trial, he has failed to demonstrate the court's denial of immunity to Sosa deprived him of the right to present a complete defense. Ahrens called Sosa as a witness at trial. The court permitted Ahrens to treat her as a hostile witness during her testimony. On the first day of Sosa's testimony, Ahrens questioned her about their trip to Arizona in the present case. The parties and court then discussed the State's request to grant Sosa immunity to testify about prior trips she and Ahrens had taken to Arizona. The superior court denied the request, based on its interpretation of *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964), and informed Sosa that she "cannot be required to testify as to anything surrounding any prior incidents that might have occurred," and could "assert [her] Fifth Amendment right regarding those incidents."

¶26          During direct examination of Sosa, she invoked her privilege against self-incrimination when asked if she went to Phoenix to pick up methamphetamine on two prior occasions, but when asked whether Ahrens joined her on two prior trips, Sosa answered "I can't remember. Maybe one more, I guess." She continued answering questions about the two prior trips and said she would talk about Ahrens' actions during the

prior trips if she could remember.  When asked if she could discuss Ahrens going "into anyplace to get drugs" with her, Sosa said, "I could if I would, but I don't remember.  It's been so long ago."

¶27        During cross-examination of Sosa, the State asked her several questions about the trips she and Ahrens had taken to Arizona.  She responded that they only traveled to and from New Mexico to Arizona together, that he helped her drive on those trips, and she paid for his way on those trips.  She said she could not recall whether Ahrens knew there was methamphetamine in the car on May 4, 2017, prior to their contact with law enforcement, but later responded she "imagine[d] he did" know.  She testified she paid Ahrens in methamphetamine after their prior trips to Arizona.

¶28        The State contends that "[e]ven if Ahrens could somehow demonstrate that Sosa would have testified that Ahrens did not have any knowledge of her illegal activities when he accompanied her on previous drug runs, this would not be clearly exculpatory evidence because it would be possible for Ahrens to have been an innocent passenger in the past, but an accomplice in the instant matter."  We agree.

¶29        Ahrens' actions on the two prior trips were not material to the offense at hand.  Evidence is material if a reasonable probability exists that its disclosure would have altered the trial's result.  *State ex rel. Romley v. Super. Ct.*, 172 Ariz. 232, 238 (App. 1992).  Here, Ahrens' culpability did not depend on his actions on prior trips; he had sufficient knowledge and constructive possession on the current trip to find him guilty of the crime.  *See supra* ¶¶ 16-21.  Further, even assuming the court erred in refusing to grant Sosa immunity, Ahrens has failed to show how not giving Sosa immunity deprived him from presenting a complete defense because he made no showing that Sosa's testimony "would present clearly exculpatory evidence."  *State v. Martinez*, 218 Ariz. 421, 428-29, ¶¶ 25-29 (2008) (citation omitted).  Ahrens was able to elicit some responses from Sosa regarding previous trips to Arizona, in which she largely responded that she could not remember details due to memory loss, likely resulting from recent head injuries she suffered while in prison.

¶30        Further, the jury heard Ahrens' interview with law enforcement, in which he made multiple inculpatory statements about their previous trips to Arizona, as discussed above.  Ahrens has therefore failed to show how not granting Sosa immunity was error, considering that the jury heard Ahrens' own statements implicating himself in prior trips to pick up methamphetamine in Arizona, and Sosa's testimony included

statements that she did not remember Ahrens' involvement in prior trips. *See State v. Axley*, 132 Ariz. 383, 388 (1982) (a defendant can only compel immunity for a witness who can present testimony that is "clearly exculpatory and essential" to the defendant's case). The jury was also instructed that the evidence of the prior trips was "admitted only for the limited purpose of proving motive, opportunity, intent, plan and knowledge."

¶31 Accordingly, we find that Ahrens failed to make a sufficient offer of proof and even if he had, he has failed to show how his defense was prejudiced by the court's denial of the State's motion to grant Sosa immunity.

## CONCLUSION

¶32 We affirm Ahrens' conviction and sentence.

